FAYER GIPSON LLP
A Limited Liability Partnership
ELLIOT B. GIPSON (State Bar No. 234020)
EGipson@fayergipson.com
GREGORY A. FAYER (State Bar No. 232303)
GFayer@fayergipson.com
2029 Century Park East, Suite 3535
Los Angeles, California 90067
Telephone: (310) 557-3558
Facsimile: (310) 557-3589

MCCORVIE LAW FIRM, P.A.
A Professional Association
LAUREN HEATWOLE MCCORVIE
(Pro Hac Vice application pending)
lauren@mccorvielaw.com
1415 E. Robinson Street, Suite B
Orlando, Florida 32801
Telephone: (407) 490-2467
Facsimile: (407) 641-9530

Attorneys for Defendant and
Counterclaimant
BY LEE TILLETT, INC.
A Florida corporation

COPY

FILED
CLERK, U.S. DISTRICT COURT

JAN - 9 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| BOLDFACE Licensing + Branding, a Nevada corporation, <br><br> Plaintiff, <br><br> v. <br><br> By Lee Tillett, Inc, a Florida corporation, <br><br> Defendant. <br><br> By Lee Tillett, Inc, a Florida corporation, <br><br> Counterclaimant, <br><br> v. <br><br> BOLDFACE Licensing + Branding, a Nevada corporation, Boldface Group, Inc., a Nevada corporation, Kimsaprincess Inc., a California corporation, 2Die4Kourt, | CASE NO. CV 12-10269 ABC (PJWx) <br><br> **BY LEE TILLETT, INC.'S ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIMS FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, CALIFORNIA TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION** <br><br> Judge: The Hon. Audrey Collins <br> Courtroom: 680 <br><br> Date Action Filed: November 30, 2012 <br> Discovery Cut-Off: None Set <br> Motion Cut-Off: None Set <br> Trial Date: None Set |

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

a California corporation, Khlomoney Inc., a California corporation, Kim Kardashian, a natural person, Kourtney Kardashian, a natural person, Khloe Kardashian, a natural person and DOES 1-10, inclusive,

Counter-defendants.

FAYER GIPSON LLP
A Limited Liability Partnership

**ANSWER AND COUNTERCLAIM**

### ANSWER

Defendant and Counterclaim Plaintiff By Lee Tillett, Inc. ("Defendant" or "Tillett"), answers Plaintiff's Complaint, as follows:

1.     Defendant denies the allegations in Paragraph 1 of the Complaint. Defendant is the owner of the KROMA® mark, which is registered with the United States Patent and Trademark Office ("USPTO") as registration no. 4079066 in international class 3 for "Cosmetics."

2.     Defendant admits that this Court has subject matter jurisdiction over this action. Except as expressly admitted, Defendant denies the remainder of the allegations asserted in Paragraph 2 of the Complaint.

3.     Defendant admits that the Court has specific jurisdiction over Defendant and admits the first, second and fourth sentences of Paragraph 3, but denies the remainder of the allegations asserted in Paragraph 3, including allegations which pertain to entities other than Defendant and for which Defendant lacks information necessary to admit or deny, and on this basis denies.

4.     Defendant admits that venue is proper in this district due to one or more of the factors stated in Paragraph 4.

5.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 5 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

6.     Defendant admits that Tillett is a Florida corporation with its principal place of business at 730 Maitland Ave., Altamonte Springs, FL 32701.

7.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 7 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

8.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 8 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

1

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

9.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 9 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

10.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 10 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

11.     Upon information and belief, Defendant admits the allegations asserted in paragraph 11 of the Complaint.

12.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 12 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

13.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 13 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

14.     Deny.

15.     Upon information and belief, Defendant admits that the Kardashians have appeared in the television shows listed in Paragraph 15 of the Complaint.  Except as expressly admitted, Defendant denies the remainder of the allegations asserted in Paragraph 15.

16.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 16 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

17.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 17 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

18.     Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 18 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

FAYER GIPSON LLP
A Limited Liability Partnership

**ANSWER AND COUNTERCLAIM**

19. Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 19 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

20. Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 20 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

21. Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 21 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

22. Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 22 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

23. Deny.

24. Deny.

25. Deny.

26. Defendant admits that Tillett is owned and operated by Lee Tillett; that Lee Tillett is, among other things, a professional celebrity makeup artist; and that Lee Tillett developed the KROMA® cosmetics line.   Except as expressly admitted, Defendant denies the remainder of the allegations asserted in Paragraph 26 of the Complaint.

27. Defendant admits that Lee Tillett developed the KROMA® cosmetics line; that Lee Tillett, among others, markets the KROMA® cosmetics line; that Lee Tillett has been involved in the cosmetics industry for over 20 years; and that Tillett is a Florida corporation with its principal place of business at 730 Maitland Ave., Altamonte Springs, FL 32701.  Except as expressly admitted, Defendant denies the remainder of the allegations asserted in Paragraph 27 of the Complaint.

28. Admit.

29. Defendant admits that Defendant has used Lee Tillett's name in

3

**ANSWER AND COUNTERCLAIM**

connection with some of Defendant's products and that Defendant's products are sold, *inter alia*, online at www.kromamakeup.com.   Except as expressly admitted, Defendant denies the remainder of the allegations asserted in Paragraph 29 of the Complaint.

30.   Defendant admits that Defendant has used Lee Tillett's name in connection with some of Defendant's products and that Defendant's products are sold, *inter alia*, online at www.kromamakeup.com.   Except as expressly admitted, Defendant denies the remainder of the allegations asserted in Paragraph 30 of the Complaint.

31.   Deny.

32.   Defendant admits that counsel for Defendant sent Plaintiff a cease and desist letter on or about June 28, 2012.  Except as expressly admitted, Defendant denies the remainder of the allegations asserted Paragraph 32 of the Complaint, including Plaintiff's characterizations of the contents of the letter, which has not been attached to the Complaint and which speaks for itself.

33.   Defendant admits that counsel for Plaintiff sent a letter to Defendant in response to Defendant's June 28 letter on or about July 18, 2012.  Except as expressly admitted, Defendant denies the remainder of the allegations asserted Paragraph 33 of the Complaint, including Plaintiff's characterizations of the contents of the letter, which has not been attached to the Complaint and which speaks for itself.

34.   Defendant admits that counsel for Defendant sent a letter to Plaintiff in response to Plaintiff's July 18 letter on or about October 26, 2012.   Except as expressly admitted, Defendant denies the remainder of the allegations asserted Paragraph 34 of the Complaint, including Plaintiff's characterizations of the contents of the letter, which has not been attached to the Complaint and which speaks for itself.

35.   Defendant admits that the parties have been unable to reach a mutually agreeable resolution of their dispute. Except as expressly admitted, Defendant denies the remainder of the allegations asserted Paragraph 35 of the Complaint.

**ANSWER AND COUNTERCLAIM**

36.    Deny.

37.    Deny.

38.    Deny.

39.    Deny.

40.    Deny.

41.    Deny.

42.    Defendant lacks information necessary to confirm or deny the allegations asserted in Paragraph 42 of the Complaint, which pertain to entities other than Defendant, and on this basis denies the same.

43.    Deny.

44.    Deny.

45.    Deny.

46.    Deny.

47.    Deny.

48.    Deny.

49.    Deny.

50.    Deny.

51.    Deny.

52.    Deny.

53.    Deny.

54.    Defendant admits that Tillett has used the phrase "by Lee Tillett" on some of Tillett's goods, packaging and/or promotional materials.  Except as expressly admitted, Defendant denies the remainder of the allegations asserted Paragraph 54 of the Complaint.

55.    Deny.

56.    Deny.

57.    Deny.

58.    Deny.

5

**ANSWER AND COUNTERCLAIM**

59.   Defendant repeats and incorporates by reference its answers to paragraphs 1-58 above as though fully set forth herein.

60.   Defendant admits that an actual case and controversy exists between Plaintiff and Defendant.   Except as expressly admitted, Defendant denies the remainder of the allegations asserted Paragraph 60 of the Complaint.

61.   Defendant admits that Plaintiff does not have the right to use the term KHROMA in connection with its cosmetics line and that Plaintiff's use of the KHROMA mark infringes Defendant's rights in the KROMA® mark.   Except as expressly admitted, Defendant denies the remainder of the allegations asserted Paragraph 60 of the Complaint.

62.   Deny.

63.   Admit.

64.   Admit.

65.   Defendant admits that Plaintiff seeks the relief described in Paragraph 65 but denies the remainder of the allegations in Paragraph 65 and denies that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

As separate and additional defenses, upon information and belief, Defendant alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

The Complaint fails to allege facts sufficient to state a claim for relief.

## SECOND AFFIRMATIVE DEFENSE

### (Lack of Standing)

Plaintiff's claims are barred because Plaintiff lacks standing to assert the claim in the Complaint.

## THIRD  AFFIRMATIVE DEFENSE

### (Laches)

6

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

Plaintiff is barred by the equitable doctrine of laches from asserting any of the claims for relief alleged in the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

(Unclean Hands)

Plaintiff is barred by the equitable doctrine of unclean hands from asserting any of the claims for relief alleged in the Complaint.

### FIFTH AFFIRMATIVE DEFENSE

(Estoppel)

Plaintiff's claim is barred by the equitable doctrine of estoppel from asserting any claims for relief alleged in the Complaint.

### SIXTH AFFIRMATIVE DEFENSE

(Waiver)

Plaintiff's claim is barred by the equitable doctrine of waiver from asserting any of the claims for relief alleged in the Complaint.

### SEVENTH AFFIRMATIVE DEFENSE

(Justification)

All actions by Defendant of which Plaintiff complains in the Complaint were justified and Defendant has at all times acted in good faith.

### EIGHTH AFFIRMATIVE DEFENSE

(Invalidity or Unenforceability of Trademarks)

Plaintiff's claims are barred because Plaintiff's purported trademarks are invalid and/or unenforceable.

### NINTH AFFIRMATIVE DEFENSE

(No Injury)

Plaintiff is barred from obtaining any relief from Defendant because Plaintiff has suffered no injury or damage as a result of any act or conduct by Defendant.

### TENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

7

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

Plaintiff's claim is barred, in whole or in part, by Plaintiff's failure to mitigate its alleged damages.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Reservation)

As to the entire Complaint, Defendant presently has insufficient knowledge or information on which to form a belief as to whether it has any additional, as yet unstated, defenses to the Complaint. Defendant reserves its rights to assert additional defenses if appropriate.

FAYER GIPSON LLP
A Limited Liability Partnership

8

**ANSWER AND COUNTERCLAIM**

## COUNTERCLAIMS

Defendant and counterclaimant By Lee Tillett, Inc., by and through counsel hereby alleges upon information and belief against counter-defendants BOLDFACE Licensing + Branding ("Boldface"), Boldface Group, Inc., Kimsaprincess Inc., 2Die4Kourt, Khlomoney Inc., Kim Kardashian, Kourtney Kardashian, Khloe Kardashian and DOES 1-10, inclusive (collectively, the "Counter-defendants") as follows:

## NATURE OF THE ACTION

1.     This trademark infringement action arises out of the intentional, willful, malicious and oppressive conduct of Boldface and the other Counter-defendants in disregarding the rights of By Lee Tillett, Inc. ("Tillett") in the selection and use of the KHROMA mark in connection with the launch of Boldface's celebrity-endorsed and licensed cosmetics line, launched in June 2012 in association with Kim, Kourtney, and Khloe Kardashian (collectively, the "Kardashian Sisters"). The Counter-defendants chose to use the KHROMA mark in connection with the Kardashian-sponsored cosmetics line despite the fact that they knew in advance that Tillett's mark KROMA® was registered with the United States Patent and Trademark Office ("USPTO") for use in connection with cosmetics. Boldface, the Kardashians, and the other Counter-defendants have advertised and promoted the KHROMA name in a way that has so saturated the market that potential customers are likely to be misled into thinking that Tillett's cosmetic line originates from Boldface, and that Tillett's KROMA® mark is associated with the Kardashian Sisters. The conduct of Boldface, the Kardashians and the other Counter-defendants has wrongfully interfered with Tillett's existing and prospective business relationships, and has caused actual confusion regarding the origin of Tillett's KROMA® products.

2.     The Kardashian Sisters, through their contractual and licensing arrangements with Boldface, have a direct pecuniary interest in the success of KHROMA cosmetics product line, have materially benefitted from the launch of the

9

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

KHROMA cosmetics product line and have the ability to control and prevent the infringing conduct complained of herein. To date, Boldface has already paid the Kardashian Sisters a $1,000,000 non-refundable, up-front royalty to license their names and likenesses in connection with the KHROMA mark and granted them a cashless warrant for 10,000,000 shares of BGI stock, exercisable at any time on or before May 22, 2022. The Kardashian Sisters, through their contractual and licensing arrangements with Boldface, have the power to prevent the infringement of the KROMA® mark by ceasing to use the KHROMA mark on their KHROMA . To date, the Kardashian Sisters have failed to prevent the use of KHROMA mark.

3.     Two years prior to Boldface's KHROMA cosmetics product launch, Tillett and Kim Kardashian's representatives discussed a possible product placement deal regarding Tillett's KROMA® cosmetics line on a reality television show called *The SPINdustry* being produced by Kim Kardashian. Tillett and Kim Kardashian's representatives also discussed the possibility of aligning KROMA® cosmetics with Kim Kardashian for certain of the public appearances. Tillett and Kim Kardashian's representatives never executed an agreement concerning the product placement of KROMA® cosmetics or alignment with Kim Kardashian. Tillett and the Counter-defendants do not have any agreements with each other relating to the KROMA® mark, nor has Tillett ever consented to any of the Counter-defendants' use of the KROMA® mark.

4.     In September 2012, about two months prior to the launch of the KHROMA cosmetics line, the USPTO issued office actions rejecting Boldface's trademark registration applications for KARDASHIAN KHROMA and KHROMA BEAUTY BY KOURTNEY, KIM AND KHLOE. The USPTO issued office actions rejecting Boldface's applications to register the Boldface KRHOMA Marks on the basis of a likelihood of confusion with Tillett's prior existing KROMA® mark.

5.     Boldface's use of word KHROMA is destroying the brand identity and value of the KROMA® mark for Tillett. Boldface's world-wide product launch

**ANSWER AND COUNTERCLAIM**

1  media blitz and the high-profile of the Kardashian Sisters, has caused KROMA's
2  consumers and distributors to mistakenly believe that Tillett's KROMA® cosmetic
3  line is associated with the Kardashian Sisters. This false association is damaging to
4  BTLI and threatens to destroy its business.

5    6.    This case arises from both state and federal claims, including trademark
6  infringement in the form of reverse confusion, and unfair competition.  Tillett seeks
7  permanent injunctive relief preventing the Counter-defendants from using the
8  KROMA® mark and all derivatives, as well as damages, treble damages, Counter-
9  defendants' profits, corrective advertising damages, attorneys' fees and punitive
10  damages arising from the Counter-defendants' willful, unlawful, intentional,
11  malicious, oppressive, unfair and misleading conduct.

12  **PARTIES**

13    7.    Counterclaim Plaintiff By Lee Tillet, Inc. is a Florida corporation located
14  at 730 Maitland Avenue, Altamonte Springs, FL 32701.

15    8.    Counter-defendant BOLDFACE Licensing + Branding is a Nevada
16  corporation with its principal place of business located at 1309 Pico Blvd., Suite A,
17  Santa Monica, CA 90405.  BOLDFACE Licensing + Branding is a wholly owned
18  subsidiary of Boldface Group, Inc. ("BGI") and is controlled and dominated by BGI.
19  At all times described herein there is a unity of interest between Boldface and BGI.
20  At all times described herein Boldface and BGI were alter egos with each other and
21  Boldface acted as BGI's agent.

22    9.    Counter-defendant Boldface Group, Inc. is a Nevada corporation with its
23  principal place of business located at 1309 Pico Blvd., Suite A, Santa Monica, CA
24  90405.   BGI is an "over-the-counter" ("OTC") publicly-traded company, whose
25  ticker symbol is BLBK.

26    10.    Counter-defendant Kimsaprincess Inc. is a California corporation located
27  on 21731 Ventura Blvd. #300, Los Angeles, CA 91364.  Kimsaprincess Inc. is
28  majority owned,  controlled, and dominated by Kim Kardashian for the benefit of Kim

11
**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

Kardashian. At all times described herein there was a unity of interest and ownership between Kim Kardashian and Kimsaprincess Inc. At all times described herein Kim Kardashian and her namesake company were alter egos of each other and Kimsaprincess Inc. acted as Kim Kardashian's agent.

11. Counter-defendant Kim Kardashian is a natural person with a residence and business located in Los Angeles County, California.

12. Counter-defendant 2Die4Kourt is a California corporation located at 21731 Ventura Blvd. #300, Los Angeles, CA 91364. 2Die4Kourt is majority owned, controlled, and dominated by Kourtney Kardashian for the benefit of Kourtney Kardashian. At all times described herein there was a unity of interest and ownership between Kourtney Kardashian and 2Die4Kourt. At all times herein, Kourtney Kardashian and her namesake company were alter egos of each other and 2Die4Kourt acted as Kourtney Kardashian's agent.

13. Counter-defendant Kourtney Kardashian is a natural person with a residence and business located in Los Angeles County, California.

14. Counter-defendant Khlomoney Inc. is a California corporation located at 21731 Ventura Blvd. #300, Los Angeles, CA 91364. Khlomoney Inc. is majority owned, controlled and dominated by Khloe Kardashian for the benefit of Khloe Kardashian. At all times described herein there is a unity of interest and ownership between Khloe Kardashian and Khlomoney Inc. At all times described herein Khloe Kardashian and her namesake company were alter egos of each other and Khlomoney Inc. acted as Khloe Kardashian's agent.

15. Counter-defendant Khloe Kardashian is a natural person with a residence and business located in Los Angeles County California.

16. The true names and capacities, whether individual, corporate, associate or otherwise, of Counter-defendants sued herein as Does 1 through 10, inclusive, are unknown at the present time and Plaintiff therefore sues said Does and each of them

FAYER GIPSON LLP
A Limited Liability Partnership

12

**ANSWER AND COUNTERCLAIM**

by such fictitious names. If necessary, Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when they are ascertained.

17. Unless otherwise indicated herein, on information and belief, each of Does 1 through 10, inclusive, participated in the activities described herein and rendered material assistance to the other Counter Defendants in the actions alleged herein, conspired and agreed with and aided and abetted one or more of the other Defendants, and at all relevant times each of the Defendants was the principal or agent, alter ego, partner, joint venturer, co-venturer, co-conspirator, independent contractor, servant and/or employee of at least one other of the other Counter Defendants, and all of the acts performed by them or omissions alleged herein were made in the course and scope of their employment, agency, partnership, joint venture, conspiracy or other such relationship and with knowledge, consent, approval and/or ratification of the principals, and each of them. Unless otherwise indicated herein, each of the parties herein named as Does 1 through 10 is responsible in some manner or fashion, and is by contract or otherwise, the successor, assign, joint venturer, co-venturer, co-conspirator, partner or alter ego of one or more of the Defendants, or was otherwise involved with the other Counter Defendants in the wrongdoing alleged herein, and by virtue of such capacity, assumed the obligations herein owed by Defendants, and is liable and responsible for the damages on the facts alleged herein and for all the relief sought.

18. Unless otherwise indicated herein, on information and belief, there has existed at all relevant times a unity of interest and ownership between each of the Does 1 through 10 named herein, and at least one or more of the Counter Defendants, such that any individuality and separateness between them has ceased and each is the "alter ego" of the other, and that adherence to the fiction of the separate existence of each Doe Counter Defendant as an entity or individual distinct from one or more of the Counter Defendants would therefore permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

13

**ANSWER AND COUNTERCLAIM**

19.     Unless otherwise indicated herein, on information and belief, there has existed at all relevant times a joint venture between each of the Does 1 through 10 named herein, and at least one or more of the Counter Defendants, such that each of the Does 1 through 10 and at least one or more of the Counter Defendants shared a common business interest, shared control, profits and losses arising from such common business interests, and therefore are liable and responsible for the damages on the facts alleged herein and for all relief sought.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), 28 U.S.C. §§ 1338 and 1367.

21.     This Court has general personal jurisdiction over the Counter-defendants, because all Counter-defendants reside and do business in this District.   This Court has specific personal jurisdiction over the Counter-defendants because their wrongful conduct as alleged herein occurred in this District.

22.     Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## GENERAL ALLEGATIONS

23.     Tillett is a Florida headquartered cosmetics company founded by Algaia Lee Tillett.  Prior to creating Tillett, Ms. Tillett had been a make-up artist known for her work with celebrities.  The KROMA® cosmetics product line grew organically out of Ms. Tillett's business as a make-up artist.

24.     Tillett filed an application to register the trademark KROMA® for cosmetics with the United States Patent on or about November 12, 2010.

25.     The USPTO issued registration no. 4079066 to Tillett for KROMA® in connection with cosmetics on or about January 3, 2012.  *See* Exhibit A attached hereto.

26.     Tillett has used the mark KROMA® in U.S. commerce continuously since its registration issued. Tillett is a cosmetics company based in Altamonte,

FAYER GIPSON LLP
A Limited Liability Partnership

14

**ANSWER AND COUNTERCLAIM**

Florida. Its KROMA® brand is known for using all-natural ingredients to produce luxurious, rich botanical makeup products. The KROMA® line is produced in the United States and distributed in the United States and Europe. KROMA® products have been featured in gift baskets at the Oscars, Emmys, Cannes Film Festival and at entertainment and fashion events around the world.

27.   On or about May 2010, representatives for Tillett and TLK Fusion were engaged in discussions regarding the possible product placement of the KROMA® cosmetics line on the television reality show special *The SPINdustry* that was scheduled to air on E! Entertainment Television following an episode of *Keeping Up with the Kardashians*. *The SPINdustry* was a television show being produced by Kim Kardashian. TLK Fusion acted as Kim Kardashian's agent in gaining product placements for the show. Tillett and TLK Fusion never reached an agreement and the KROMA® cosmetics line did not appear on the show.

28.   Tillett and TLK Fusion also discussed the possibility of aligning the KROMA® brand with Kim Kardashian for certain of Kim Kardashian's public appearances. The parties did not reach agreement.

29.   Boldface was founded on or about April 26, 2012 by Nicole Ostoya. Its articles of incorporation indicate it was capitalized with $1000. Mr. Ron Altbagh and Ms. Ostoya are directors of Boldface. Ms. Ostoya is also Boldface's President and CEO.

30.   At the time of its formation, the primary asset that Boldface had was its relationship with the Kardashian Sisters and the prospect of a licensing, personal services and endorsement deal with the Kardashian Sisters through the Kardashian Entities.

31.   BGI is the parent company of Boldface, which it acquired as the end result of a reverse merger. BGI, formerly known as Max Cash Media, Inc., amended and restated its articles of incorporation with the state of Nevada on or about May 21, 2012. It is a publicly traded company traded over-the-counter ("OTC"). Its ticker

15

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

symbol is BLBK.  Its articles of incorporation indicate it was capitalized with $310,000.  Mr. Altbagh and Ms. Ostoya are directors of BGI.  Ms. Ostoya is BGI's President and CEO.

32.    Boldface and BGI refer to themselves together as the "Company" in their filings with the Securities and Exchange Commission.

33.    The KHROMA cosmetic line is the primary asset of Boldface and BGI.  Without the KHROMA cosmetic line and the attendant licensing, personal services and endorsement arrangements it has with the Kardashian Sisters, Boldface and BGI would run soon out of money and go out of business.  Boldface's and BGI's business relationship with the Kardashian Sisters is essential to Boldface's and BGI's business plans and survival.

34.    Kim, Kourtney and Khloe Kardashian are known for their appearances in reality television series, celebrity gossip magazines, endorsements and licensing deals, and general presence in popular culture of celebrity. Each of the Kardashian sisters formed an entity named after themselves in order to run their businesses associated with their celebrity and attempt to limit liability associated with such businesses:  Kim formed, owns, and controls Kimsaprincess, Inc., Kourtney formed, owns, and controls 2Die4Kourt, and Khloe formed, owns, and controls Khlomoney Inc.  Kimsaprincess Inc., 2Die4Kourt and Khlomoney Inc. (collectively, the "Kardashian Entities") are run solely for the benefit of their respective Kardashian owners.

35.    The Kardashian Entities were not capitalized with material amounts of money at the time of their creation.  Rather, the primary asset of each of Kardashian Entities is the ability to enter into licensing and endorsement agreements on behalf of each respective sisters.  Without the ability to enter into such licensing and personal service agreements on behalf of the Kardashian Sisters, the Kardashian Entities would not make any money and have no value.

36.    Each Kardashian Sister has the ability to supervise and approve of any deal that her respective namesake Kardashian Entity enters into and any deal requiring

FAYER GIPSON LLP
A Limited Liability Partnership

16

**ANSWER AND COUNTERCLAIM**

her to perform any service, such as a personal service. Each Kardashian Sister ultimately controls and is responsible for her own respective name and likeness and the products and services it is associated with. Each Kardashian Sister is closely associated with her respective namesake entity and anyone who wants to do a licensing deal with Kardashian Sister must do so through each respective Kardashian Sister's namesake entity. Each Kardashian Sister dominates her respective Kardashian Entity to such a degree that each Kardashian Entity is the alter ego of its namesake Kardashian Sister. Each Kardashian Sister is a partner and joint venturer with her respective namesake Kardashian Entity in each deal that her respective namesake Kardashian Entity executes.

37.    Kimsaprincess Inc. is the agent for Kim Kardashian for each licensing, personal services, and endorsement deal Kimsaprincess Inc. enters into.

38.    2Die4Kourt is the agent for Kourtney Kardashian for each licensing, personal services, and endorsement deal 2Die4Kourt enters into.

39.    Khlomoney Inc. is the agent for Khloe Kardashian for each licensing, personal services, and endorsement deal Khlomoney Inc. enters into.

40.    On or about May 21, 2012, the Kardashian Sisters, through the Kardashian Entities, entered into a four (4) year licensing agreement with Boldface through their respective licensing entities (Kimsaprincess Inc., 2Die4Kourtney, and Khlomoney Inc.) whereby the Kardashian Sisters would license their name and likeness to Boldface for use in association with a cosmetics line in return for royalty payments and stock warrants. The Kardashian Sisters retain approval rights for how their name and likeness is used under the agreement. The Kardashian Sisters retained approval rights for the names and marks of the cosmetics line with which the Kardashian Sisters' names and likenesses would be associated.

41.    Boldface agreed to pay the Kardashian Sisters guaranteed minimum royalty payments of $4,686,125 or $5,206,900 depending on launch date of various products. Boldface paid the Kardashian Sisters a $1,000,000 non-refundable advance

17

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

royalty on or about September 30, 2012. In addition, BGI issued the Kardashian Sisters 10,000,000 cashless warrants exercisable at any time within ten (10) years of issuance. As of January 7, 2013 the BGI's stock price varied between 18 cents and 36 cents during the last 52 week range. This valuation would make the Kardashian Sisters' stock warrants worth between $1.8 million and $3.6 million.

42.     The Kardashian Sisters have approval rights over the words, names and marks that are used in association with their names and likenesses.

43.     Kim Kardashian proposed that the Boldface cosmetics line sold in connection with the Kardashian Sisters licensing deal be called KHROMA. Kourtney Kardashian and Khloe Kardashian agreed with and ratified Kim Kardashian's proposal. Boldface and BGI accepted and ratified the Kardashian Sisters' proposal by proceeding to attempt to register the KHROMA marks with the USPTO and using the KHROMA mark in commerce in connection with cosmetics.

44.     Prior to commencing use of the KHROMA marks, Boldface caused its attorneys to perform a trademark search. The trademark search indicated that KROMA® mark was owned by Tillett and registered in international class 3 for cosmetics.

45.     There are no other marks registered in international class 3 for cosmetics that sound like the KROMA® mark and begin with the letter K.

46.     The heart of the Counter-defendants' mark is the word KHROMA. It is important to Counter-defendants that they use the word KHROMA– rather than CHROMA – because it begins with the letter K. Boldface never attempted to register the mark KHROMA by itself because Boldface's attorneys knew that such a mark would be rejected on the basis of Tillett's prior existing KROMA® mark. Instead, Boldface attempted to distinguish its mark from KROMA® in its USPTO applications by surrounding it with other words, hence the applications for KARDASHIAN KHROMA and KHROMA BEAUTY BY KOURTNEY, KIM AND KHLOE.

18

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

47.    At the time of the filing of trademark registration applications for the KHROMA Marks in June 2012, Boldface acted recklessly, intentionally and with disregard for the trademark rights of others when it filed the trademark registration applications the Boldface KHROMA marks and commenced using the Boldface KHROMA marks in commerce, notwithstanding Boldface and each of the Counter-defendants' express knowledge of Tillett's KROMA® mark.

48.    Despite Boldface's efforts to distinguish its mark from KROMA® on its applications by adding additional words around KHROMA, the USPTO issued office actions rejecting Boldface's applications for KARDASHIAN KHROMA and KHROMA BEAUTY BY KOURTNEY, KIM AND KHLOE.  *See* Exhibits B and C attached hereto.

49.    The word KHROMA is the most prominent part of Boldface's mark. The word KHROMA is the only word consistently used to describe Boldface's cosmetics line across all media and packaging.  Sometimes the cosmetics line is referred to as "Khroma Beauty."  The current iteration of Boldface's packaging as used in U.S. commerce in connection with cosmetics features the word KHROMA in giant font that is at least twice as big as the font used for any surrounding words.   An example of the current iteration of the KHROMA packaging is shown in Figure 1 on page 3 of Boldface's Complaint for Declaratory Judgment. The packaging shown does not use the marks KARDASHIAN KHROMA or KHROMA BEAUTY BY KOURTNEY, KIM AND KHLOE.

50.    Counter-defendants knew of the KROMA® brand prior to commencing their use of the infringing mark KHROMA.  Counter-defendants knew that Plaintiff would be damaged at the time they began to use the KHROMA mark.

51.    Counter-defendants deliberately chose to use the mark KHROMA despite their knowledge of Tillett's prior use of the KROMA® mark and knew that Boldface's use of the KHROMA mark would mislead and confuse consumers into believing that Tillett's KROMA® cosmetics line was associated with Boldface, BGI

**ANSWER AND COUNTERCLAIM**

1  and the Kardashian Sisters because of the media blitz that Boldface planned in

2  conjunction with the launch of its product line.

3      52.    Tillett first became aware of Boldface's intention to use of the

4  KHROMA mark in connection with cosmetics on or about June 2012.

5      53.    Tillett, through its attorney, sent Boldface a cease and desist letter on or

6  about June 28, 2012.  Boldface informed the rest of the Counter-defendants of Tillett's

7  claims on or about that same date.  Tillett and Boldface subsequently exchanged

8  correspondence and communications in an attempt to settle the dispute but were

9  unable to reach an agreement.

10     54.    Boldface continued to use the KROMA® mark in connection with

11 cosmetics thereafter, knowing that Tillett would be damaged by such use.

12     55.    Since the media blitz surrounding the launch of Boldface's KHROMA,

13 there have already been instances of actual consumer confusion.  Tillett has fielded

14 several inquiries from persons inquiring whether KROMA® was associated with the

15 Kardashian Sisters.

16     56.    Tillett has been damaged by Boldface's use of the KHROMA mark and

17 will continue to be damaged by Boldface's use of the KHROMA mark until such time

18 as Counter-defendants' use of the KHROMA mark permanently ceases.

19     57.    Each of the Counter-defendants approved of and ratified Boldface's

20 actions with respect to the selection, development and implementation of the use of

21 the KHROMA mark in commerce in connection with cosmetics.

22     58.    Each of the Counter-defendants benefited financially from the sales of

23 products labeled with the KHROMA mark.

24     59.    Each the Counter-defendants had the ability to prevent the KHROMA

25 marks from being used on cosmetics and failed to stop the infringement of the

26 KROMA® mark even after being notified of Tillett's claims.

27                    **FIRST CLAIM FOR RELIEF**

28 **TRADEMARK INFRINGEMENT PURSUANT TO 15 U.S.C. 1114(a)(1)**

FAYER GIPSON LLP
A Limited Liability Partnership

**ANSWER AND COUNTERCLAIM**

**[Against All Counter-defendants]**

60.     Tillett repeats and realleges the allegations made in paragraphs 1 through 59 as if fully set forth herein.

61.     The KROMA® mark is owned by Tillett and registered with the USPTO as registration no. 4079066 in international class 3 for "cosmetics." The KROMA® mark is of great value to Tillett. Tillett and/or its predecessors in interest have used the mark continuously in U.S. commerce in connection with the KROMA® cosmetics line since at least 2004. Such use has occurred continuously and prior to Counter-defendants' use of the KHROMA mark beginning in 2011.

62.     Counter-defendants use the KHROMA mark in U.S. commerce in connection with the sale of their cosmetics products. This use is not and has never been authorized by Tillett.

63.     Counter-defendants' use of the KHROMA mark is likely to cause consumer confusion, or to cause mistake and/or deceive consumers as to the affiliation, connection, or association of Tillett and Tillett's KROMA® cosmetic products line with the Counter-defendants' KHROMA cosmetics products line.

64.     The Counter-defendants used the KHROMA mark as alleged herein notwithstanding their prior knowledge of Tillett's rights to the registered KROMA® mark.

65.     The Counter-defendants used the KHROMA mark in bad faith, knowing that it would cause consumer confusion, mistake and/or deception.

66.     The Counter-defendants each approved of, ratified and took acts in furtherance of the unauthorized use the KHROMA mark and each of the other actions complained of herein.

67.     Each of the Counter-defendants has financially benefited from the sale of cosmetic products labeled with the KHROMA mark.

68.     Each of the Kardashian Sisters is a moving, active and conscious force behind the infringement of the KROMA® mark, and each has directly financially

FAYER GIPSON LLP
A Limited Liability Partnership

21

**ANSWER AND COUNTERCLAIM**

benefitted from the infringement.

69.    Tillett has no control over the quality of the goods that Counter-defendants provide in association with the KHROMA mark.

70.    The Counter-defendants exercise joint control over the infringing Khroma cosmetic products distributed in the United States. In particular, the Counter-defendants jointly control the appearance of and substance of the cosmetic products carrying the Khroma name. Each of the Counter-defendants had and has the ability to prevent the infringement of the KROMA® mark. None of the Counter-defendants have taken any action to cease such infringement, even after having received actual notice of Tillett's claims.

71.    Each Counterclaim Defendant is a joint tortfeasor and liable for the wrongful conduct of the others. Each and every Counter-defendant acted in concert, aided and abetted each other, and engaged in conduct constituting trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(A)(1).

72.    As a direct, proximate, and foreseeable result of the Counter-defendants' conduct and omissions alleged above, Tillett has suffered and will continue to suffer damages in an amount to be determined at trial. Under the Lanham Act, Tillett is entitled to both an award of damages to its own business attributable to the Counter-defendants' infringing conduct and to an award of the Counter-defendants' profits derived from their infringement. These amounts will be determined at trial by the trier of fact, but are believed to be in no event less than $10 million, representing a conservative estimate of profits and payments to Counter-defendants and damages to Tillett's business stemming from Counter-defendants' violations of law.   Tillett is also entitled to treble damages under the Lanham Act due to the willful and extreme nature of the Counter-defendants' violations of law.

73.    As a direct and proximate result of the foregoing acts and conduct, Tillett has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the

22

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

loss of consumer goodwill.  Tillett is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the Counter-defendants will continue to engage in conduct violative of the Lanham Act.  Tillett is entitled to preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF

## FALSE DESIGNATION OF ORIGIN PURSUANT TO 15 U.S.C. 1125(a)

### [Against All Counter-defendants]

74.   Tillett repeats and realleges the allegations made in paragraphs 1 through 73 as if fully set forth herein.

75.   Tillett owns the KROMA® mark.  Tillett and/or its predecessors in interest have used the mark continuously in U.S. commerce in connection with the KROMA® cosmetics line since at least 2004. Such use has occurred continuously and prior to Counter-defendants' use of the KHROMA mark beginning in 2011.

76.   Counter-defendants use the KHROMA mark in U.S. commerce in connection with the sale of their cosmetics products.  This use is not and has never been authorized by Tillett.

77.   The Counter-defendants' use of the KHROMA mark in U.S. commerce in connection with Cosmetics is likely to cause consumer confusion, or to cause mistake and/or deceive consumers as to the affiliation, connection, or association of Tillett and Tillett's KROMA® cosmetics with Counter-defendants' KHROMA cosmetics.

78.   The Counter-defendants' use of the KHROMA mark in U.S. commerce in connection with cosmetics has already caused consumer confusion, mistake and/or deceived consumers as to the affiliation, connection, or association of Tillett and Tillett's KROMA® cosmetics with Counter-defendants' KHROMA cosmetics.

79.   The Counter-defendants used the KHROMA mark as alleged herein notwithstanding their prior knowledge of Tillett's rights to the registered KROMA® mark.

**ANSWER AND COUNTERCLAIM**

80.    The Counter-defendants used the KHROMA mark in bad faith with the intent to cause consumer confusion, mistake and/or deception.

81.    The Counter-defendants each approved of, ratified and took acts in furtherance of the unauthorized use the KHROMA mark and each of the other actions complained of herein.

82.    Each of the Counter-defendants has financially benefited from the sale of cosmetic products labeled with the KHROMA mark.

83.    Each of the Kardashian Sisters is a moving, active and conscious force behind the infringement of the KROMA® mark, and each has directly financially benefitted from the infringement.

84.    The Counter-defendants exercise joint control over the infringing Khroma cosmetic products distributed in the United States.  In particular, the Counter-defendants jointly control the appearance of and substance of the cosmetic products carrying the Khroma name.  Each of the Counter-defendants had and has the ability to prevent the infringement of the KROMA® mark.  None of the Counter-defendants have taken any action to cease such infringement, even after having received actual notice of Tillett's claims.

85.  Each Counter-defendant is a joint tortfeasor of the other Counter-defendants and is liable for the wrongful conduct of the other Counter-defendants.

86.    Each and every Counter-defendant acted in concert, aided and abetted each other, and engaged in conduct constituting false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

87.    As a direct, proximate, and foreseeable result of the Counter-defendants' conduct and omissions alleged above, Tillett has suffered and will continue to suffer damages in an amount to be determined at trial.  Under the Lanham Act, Tillett is entitled to both an award of damages to its own business attributable to the Counter-defendants' infringing conduct and to an award of the Counter-defendants' profits derived from their infringement.  These amounts will be determined at trial by the trier

24

**ANSWER AND COUNTERCLAIM**

of fact, but are believed to be in no event less than $10 million, representing a conservative estimate of profits and payments to Counter-defendants and damages to Tillett's business stemming from Counter-defendants' violations of law.   Tillett is also entitled to treble damages under the Lanham Act due to the willful and extreme nature of the Counter-defendants' violations of law.

88.   As a direct and proximate result of the foregoing acts and conduct, Tillett has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.   Tillett is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the Counter-defendants will continue to engage in conduct violative of the Lanham Act.   Tillett is entitled to preliminary and permanent injunctive relief.

### THIRD CLAIM FOR RELIEF

### TRADEMARK INFRINGEMENT PURSUANT TO CAL. BUS. & PROF. CODE § 14200 ET SEQ.

### [Against All Counter-defendants]

89.   Tillett repeats and realleges the allegations made in paragraphs 1 through 88 as if fully set forth herein.

90.   Tillett possesses a valid mark entitled to protection under California Business and Professions Code Sections 14200 *et seq.* (the "California Trademark Act") – namely, the KROMA® mark.   Tillett and/or its predecessors in interest have used the mark in commerce in California in connection with the Kroma cosmetics line.   Such use has occurred continuously and prior to Counter-defendants' use of the KHROMA mark beginning in 2011.

91.   Counter-defendants use the KHROMA mark in commerce in California connection with the sale of their cosmetics products.   This use is not and has never been authorized by Tillett.

92.   Counter-defendants' use of the KHROMA mark is likely to cause

25

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

consumer confusion, or to cause mistake and/or deceive consumers as to the affiliation, connection, or association of Tillett and Tillett's KROMA® cosmetic products line with the Counter-defendants' KHROMA cosmetics products line.

93.    The Counter-defendants used the KHROMA mark as alleged herein notwithstanding their prior knowledge of Tillett's rights to the registered KROMA® mark.

94.    The Counter-defendants used the KHROMA mark in bad faith, knowing that it would cause consumer confusion, mistake and/or deception.

95.    The Counter-defendants each approved of, ratified and took acts in furtherance of the unauthorized use the KHROMA mark and each of the other actions complained of herein.

96.    Each of the Counter-defendants has financially benefited from the sale of cosmetic products labeled with the KHROMA mark.

97.    Each of the Kardashian Sisters is a moving, active and conscious force behind the infringement of the KROMA® mark, and each has directly financially benefitted from the infringement.

98.    The Counter-defendants exercise joint control over the infringing Khroma cosmetic products distributed in the United States. In particular, the Counter-defendants jointly control the appearance of and substance of the cosmetic products carrying the Khroma name. Each of the Counter-defendants had and has the ability to prevent the infringement of the KROMA® mark. None of the Counter-defendants have taken any action to cease such infringement, even after having received actual notice of Tillett's claims.

99.    Tillett has no control over the quality of the goods that Counter-defendants provide in association with the KHROMA mark.

100. Each Counter-defendant is a joint tortfeasor of the other Counter-defendants and is liable for the wrongful conduct of the other Counter-defendants.

101. Each and every Counter-defendant acted in concert, aided and abetted

26

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

each other, and engaged in conduct constituting trademark infringement in violation of the California Trademark Act.

102.  As a direct, proximate, and foreseeable result of the Counter-defendants' conduct and omissions alleged above, Tillett has suffered and will continue to suffer damages in an amount to be determined at trial.  Under the California Trademark Act, Tillett is entitled to both an award of damages to its own business attributable to the Counter-defendants' infringing conduct and to an award of the Counter-defendants' profits derived from their infringement.  These amounts will be determined at trial by the trier of fact, but are believed to be in no event less than $10 million, representing a conservative estimate of profits and payments to Counter-defendants and damages to Tillett's business stemming from Counter-defendants' violations of law.

103.  As a direct and proximate result of the foregoing acts and conduct, Tillett has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Tillett is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the Counter-defendants will continue to engage in conduct violative of the California Trademark Act.  Tillett is entitled to preliminary and permanent injunctive relief.

## FOURTH CLAIM FOR RELIEF
## UNFAIR COMPETITION
## PURSUANT TO CAL. BUS. & PROF. CODE §§ 17200 et seq
### [Against All Counter-defendants]

104.  Tillett repeats and realleges the allegations made in paragraphs 1 through 103 as if fully set forth herein.

105.  Tillett owns the KROMA® mark, which is a valid mark entitled to protection under the Lanham Act.

106.  The Counter-defendants' conduct in using the KHROMA mark in U.S. commerce constitutes an unlawful and unfair business act or practice taken in

27

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

deliberate disregard for Tillett's rights under the Lanham Act and under the California Trademark Act.

107.   The Counter-defendants' unlawful infringement of the KROMA® mark was intentional, willful, and with reckless disregard and indifference to Tillett's rights.

108.   The Counter-defendants have each benefited from their unlawful and unfair business acts and practices.

109.   The Counter-defendants each approved of, ratified and took acts in furtherance of the unauthorized use the KHROMA mark and each of the other actions complained of herein.

110.   Each of the Counter-defendants has financially benefited from the sale of cosmetic products labeled with the KHROMA mark.

111.   The Counter-defendants exercise joint control over the infringing Khroma cosmetic products distributed in California.   In particular, the Counter-defendants jointly control the appearance of and substance of the cosmetic products carrying the Khroma name.   Each of the Counter-defendants had and has the ability to prevent the infringement of the KROMA® mark.   None of the Counter-defendants have taken any action to cease such infringement, even after having received actual notice of Tillett's claims.

112.   Each of the Kardashian Sisters is a moving, active and conscious force behind the infringement of the KROMA® mark and the unlawful and unfair business acts and practices alleged herein.

113.   Each Counter-defendant is a joint tortfeasor of the other Counter-defendants and is liable for the wrongful conduct of the other Counter-defendants.

114.   Each and every Counter-defendant acted in concert, aided and abetted each other, and engaged in conduct constituting an illegal business practice prohibited by the California Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.* (the "UCL"), by and through their violations of the Lanham Act, 15 U.S.C. 1125(A) and of the California Trademark Act, Cal. Bus. & Prof. Code § 14200

FAYER GIPSON LLP
A Limited Liability Partnership

28

**ANSWER AND COUNTERCLAIM**

*et seq.*

115.   As a direct, proximate, and foreseeable result of the Counter-defendants' conduct and omissions alleged herein, Tillett has suffered and will continue to suffer injury-in-fact.  Under the UCL, Tillett is entitled to restitution of Counter-defendants' ill-gotten gains stemming from their violations of law in an amount to be determined at trial.

116.   As a direct and proximate result of the foregoing acts and conduct, Tillett has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including without limitation the loss of consumer goodwill.  Tillett is informed and believes and on that basis avers that unless enjoined and restrained by this Court, the Counter-defendants will continue to engage in conduct violative of California law.  Tillett is entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Tillett respectfully requests that the Court enter judgment against the Counter-defendants and for Tillett and prays as follows:

A. That the Court deny Boldface's request for declaratory judgment in its entirety;

B. That the Boldface Complaint be dismissed its entirety with prejudice;

C. For permanent injunctive relief preventing Counter-defendants, along with their assignees, transferees, employees, agents, owners and representatives, and all other persons, firms or entities acting in concert or participation with them, from using the mark KHROMA or any derivation thereof utilizing the KROMA® mark in connection with cosmetics goods and services, in any manner, including but not limited to preventing them from:

i.   Using, displaying, advertising, or promoting the KHROMA and KROMA® marks in connection with cosmetics; and

ii.   Using, displaying, advertising, or promoting the KHROMA and

29

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

KROMA® marks in connection with any goods or services related to cosmetics, including without limitation haircare, soaps, and lotions; and

    iii.  Assisting any other person or entity from engaging in the conduct described in subparagraphs (i) and (ii) above.

B.    For an award of damages caused by Counter-defendants' unlawful conduct in an amount to be ascertained at trial;

C.    For an award of Counter-defendants' profits stemming from their unlawful conduct in an amount to be ascertained at trial;

D.    For an award of damages for corrective advertising to in an amount to be ascertained at trial.

E.    For treble damages pursuant to the Lanham Act;

F.    For prejudgment interest;

G.    For restitution of Counter-defendants' ill-gotten gains and such sums as would otherwise have been owed or paid to Tillett absent Counter-defendants' violations of law, in an amount to be ascertained at trial;

H.    For Plaintiff's attorneys' fees pursuant to the Lanham Act or in the alternative, pursuant to Cal. Bus. & Prof. Code §§ 17200 et seq.;

I.    For costs of suit incurred in this action;

//
//
//
//
//
//
//
//
//

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

1   J.  For punitive damages under California Civil Code section 3294 or in the

2 alternative as otherwise available; and

3   K.  For such other further relief that the Court may deem just and proper.

4

5 DATED: January 9, 2013     FAYER GIPSON LLP
                 A Limited Liabiity Partnership

6                 ELLIOT B. GIPSON
                 GREGORY A. FAYER

7

8

9          By _____

10           ELLIOT B. GIPSON
          Attorneys for Defendant
          BY LEE TILLETT, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

**ANSWER AND COUNTERCLAIM**

FAYER GIPSON LLP
A Limited Liability Partnership

## JURY DEMAND

Tillett hereby demands a trial by jury of all issues in the Complaint and Counterclaim Complaint.

DATED:  January 9, 2013

FAYER GIPSON LLP
A Limited Liabiity Partnership
ELLIOT B. GIPSON
GREGORY A. FAYER

By _____
ELLIOT B. GIPSON
Attorneys for Defendant
BY LEE TILLETT, INC.

**ANSWER AND COUNTERCLAIM**

# Exhibit A

KROMA® Trademark Registration

# United States of America

### United States Patent and Trademark Office

# KROMA

**Reg. No. 4,079,066**

**Registered Jan. 3, 2012**

**Int. Cl.: 3**

**TRADEMARK**

**PRINCIPAL REGISTER**

BY LEE TILLETT, INC. (FLORIDA CORPORATION)
SUITE 102
670 N. ORLANDO AVENUE
MAITLAND, FL 32751

FOR: COSMETICS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 3-0-2004; IN COMMERCE 3-0-2004.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-175,392, FILED 11-12-2010.

ALLISON HOLTZ, EXAMINING ATTORNEY



*Director of the United States Patent and Trademark Office*

# Exhibit B

## KARDASHIAN KHROMA

## USPTO Office Action Rejecting Application

| To: | Boldface Licensing + Branding (VC@ETMLAW.COM) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 85642342 - KARDASHIAN KHROMA - 2012-254-TM |
| Sent: | 9/26/2012 11:12:38 PM |
| Sent As: | ECOM107@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**      85642342

**MARK**: KARDASHIAN KHROMA

**CORRESPONDENT ADDRESS**:
VICTORIA CARVER
CARVER LAW
PO BOX 206
BELLEFONTE, PA 16823-0206

**APPLICANT**:      Boldface Licensing + Branding

# *85642342*

**CLICK HERE TO RESPOND TO THIS LETT**
http://www.uspto.gov/trademarks/teas/response_forms.j

CORRESPONDENT'S REFERENCE/DOCKET NO :
   2012-254-TM
CORRESPONDENT E-MAIL ADDRESS:
   VC@ETMLAW.COM

# *OFFICE ACTION*

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST
RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE
ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 9/26/2012**

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant
must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a),
2.65(a); TMEP §§711, 718.03.

### SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S.
Registration Nos. 4079066 and 3919997.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP
§§1207.01 *et seq.*  See the enclosed registrations.

A likelihood of confusion determination in this case involves a two-part analysis.  The marks are
compared for similarities in their appearance, sound, connotation and commercial impression.  TMEP
§§1207.01, 1207.01(b).  The goods and/or services are compared to determine whether they are similar or
commercially related or travel in the same trade channels.  *See Herbko Int'l, Inc. v. Kappa Books, Inc.* ,
308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002); *Han Beauty, Inc. v. Alberto-Culver Co.*,
236 F.3d 1333, 1336, 57 USPQ2d 1557, 1559 (Fed. Cir. 2001); TMEP §§1207.01, 1207.01(a)(vi).

The applicant applied to register the mark KARDASHIAN KHROMA for "personal care products
including cosmetics, body and beauty care products." The registered marks are KROMA and KIM
KARDASHIAN for "Cosmetics."

## I. COMPARISON OF THE MARKS

The marks are compared for similarities in sound, appearance, meaning or connotation.  *In re E .I. du Pont
de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973).  Similarity in any one of these
elements may be sufficient to find a likelihood of confusion.  *In re White Swan Ltd.*, 8 USPQ2d 1534,
1536 (TTAB 1988); *In re Lamson Oil Co.*, 6 USPQ2d 1041, 1043 (TTAB 1987); *In re Mack*, 197 USPQ
755 (TTAB 1977); TMEP §1207.01(b).

In this case, the marks are similar in sound, appearance and connotation. The applicant's mark includes

additional wording not found in the registered marks but this difference fails to distinguish the marks because the marks contain similar wording. Marks may be confusingly similar in appearance where there are similar terms or phrases or similar parts of terms or phrases appearing in both applicant's and registrant's mark. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce* , 228 USPQ 689 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n* , 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987) (COMMCASH and COMMUNICASH); *In re Phillips-Van Heusen Corp.*, 228 USPQ 949 (TTAB 1986) (21 CLUB and "21" CLUB (stylized)); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985) (CONFIRM and CONFIRMCELLS); *In re Collegian Sportswear Inc.*, 224 USPQ 174 (TTAB 1984) (COLLEGIAN OF CALIFORNIA and COLLEGIENNE); *In re Pellerin Milnor Corp.*, 221 USPQ 558 (TTAB 1983) (MILTRON and MILLTRONICS); *In re BASF A.G.*, 189 USPQ 424 (TTAB 1975) (LUTEXAL and LUTEX); TMEP §1207.01(b)(ii)-(iii).

Furthermore, the mere addition of a term to a registered mark generally does not obviate the similarity between the marks nor does it overcome a likelihood of confusion under Trademark Act Section 2(d). *See In re Chatam Int'l Inc.* , 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004) (GASPAR'S ALE and JOSE GASPAR GOLD); *Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 188 USPQ 105 (C.C.P.A. 1975) (BENGAL and BENGAL LANCER); *Lilly Pulitzer, Inc. v. Lilli Ann Corp.*, 376 F.2d 324, 153 USPQ 406 (C.C.P.A. 1967) (THE LILLY and LILLI ANN); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266 (TTAB 2009) (TITAN and VANTAGE TITAN); *In re El Torito Rests., Inc.*, 9 USPQ2d 2002 (TTAB 1988) (MACHO and MACHO COMBOS); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985) (CONFIRM and CONFIRMCELLS); *In re U.S. Shoe Corp.*, 229 USPQ 707 (TTAB 1985) (CAREER IMAGE and CREST CAREER IMAGES); *In re Riddle*, 225 USPQ 630 (TTAB 1985) (ACCUTUNE and RICHARD PETTY'S ACCU TUNE); TMEP §1207.01(b)(iii).

Moreover, similarity in sound alone may be sufficient to support a finding that the marks are confusingly similar. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1st USA Realty Prof'ls, Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007); TMEP §1207.01(b)(iv).

Regarding the issue of likelihood of confusion, the question is not whether people will confuse the marks, but whether the marks will confuse people into believing that the goods they identify come from the same source. *In re West Point-Pepperell, Inc.,* 468 F.2d 200, 175 USPQ 558 (C.C.P.A. 1972). For that reason, the test of likelihood of confusion is not whether the marks can be distinguished when subjected to a side-by-side comparison. The question is whether the marks create the same overall impression. *Recot, Inc. v. M.C. Becton,* 214 F.2d 1322, 54 USPQ2d 1894, 1890 (Fed. Cir. 2000); *Visual Information Inst., Inc. v. Vicon Indus. Inc.*, 209 USPQ 179 (TTAB 1980). The focus is on the recollection of the average purchaser who normally retains a general rather than specific impression of trademarks. *Chemetron Corp. v. Morris Coupling & Clamp Co.*, 203 USPQ 537 (TTAB 1979); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975); TMEP §1207.01(b).

## II.COMPARISON OF THE GOODS

The goods and/or services of the parties need not be identical or directly competitive to find a likelihood of confusion. Instead, they need only be related in some manner, or the conditions surrounding their marketing are such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods and/or services come from a common source. *Online Careline Inc. v. America Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000); *In re Martin's Famous Pastry Shoppe* , *Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984); *Guardian Prods. Co., Inc. v. Scott Paper Co.*, 200 USPQ 738

(TTAB 1978); *In re Int'l Tel. & Tel. Corp* ., 197 USPQ 910 (TTAB 1978); TMEP §1207.01(a)(i).

The applicant identifies goods that are related and identical to the registrants'. In a likelihood of confusion analysis, the comparison of the parties' goods is based on the goods as they are identified in the application and registration, without limitations or restrictions that are not reflected therein. *In re Dakin's Miniatures, Inc.*, 59 USPQ2d 1593, 1595 (TTAB 1999); *see Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 1267-68, 62 USPQ2d 1001, 1004-05 (Fed. Cir. 2002); *In re Thor Tech, Inc.*, 90 USPQ2d 1634, 1638-39 (TTAB 2009); TMEP §1207.01(a)(iii).

In the present case, applicant's goods are cosmetics and registrants' goods are cosmetics. Thus, the goods are identical, and it is presumed that they move in all normal channels of trade and are available to all potential customers. *See Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1356, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *In re La Peregrina Ltd.*, 86 USPQ2d 1645, 1646 (TTAB 2008); TMEP §1207.01(a)(iii).

Accordingly, the goods are considered related for purposes of the likelihood of confusion analysis. Therefore, because of the similarities between the marks and goods of the parties, a likelihood of confusion as to source of these goods must be found to exist.

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

SEARCH RESULTS

The filing dates of pending U.S. Application Serial Nos. 85106598; 85380119; 77647942 and  77964312 precede applicant's filing date. See attached referenced applications. If one or more of the marks in the referenced applications register, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion with the registered mark(s). *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.* Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced applications.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the marks in the referenced applications. Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

If the applicant chooses to respond to the refusal to register, the applicant must also respond to the following requirements.
IDENTIFICATION OF GOODS

The identification of goods is indefinite and must be clarified because it includes the open-ended wording "including." See TMEP §§1402.01, 1402.03(a). The identification must be specific and all-inclusive. Therefore, this wording should be deleted and replaced with "namely."

Applicant may amend the identification to list only those items that are within the scope of the goods set forth in the application or within the scope of a previously accepted amendment to the identification. See 37 C.F.R. §2.71(a); TMEP §§1402.06 et seq., 1402.07.

The word "products" in the identification of goods is indefinite and must be clarified because it is too

broad and could refer to goods in multiple international classes.  Applicant must amend the identification by stating the common generic name of each item or by describing the nature, purpose and intended use of each item.  *See* TMEP §§1402.01, 1402.03.

The applicant may adopt the following wording if accurate:

Personal care products, **namely,** cosmetics, **non-medicated** body and beauty care products **in the nature of body oils, and beauty creams for body care**, in International Class 3.

Medicated **body** care **product**s, namely, **skin care creams**, in International Class 5.

Please note that, while the identification of goods may be amended to clarify or limit the goods, adding to the goods or broadening the scope of the goods is not permitted.  37 C.F.R. §2.71(a); TMEP §1402.06.  Therefore, applicant may not amend the identification to include goods that are not within the scope of the goods set forth in the present identification.

For assistance with identifying and classifying goods and/or services in trademark applications, please see the online searchable *Manual of Acceptable Identifications of Goods and Services* at http://tess2.uspto.gov/netahtml/tidm.html.


Combined Applications

If applicant prosecutes this application as a combined, or multiple-class application, then applicant must comply with each of the following for those goods and/or services based on an intent to use the mark in commerce under Trademark Act Section 1(b):

> (1)  Applicant must list the goods and/or services by international class with the classes listed in ascending numerical order.  TMEP § 1403.01; and

> (2)  Applicant must submit a filing fee for each international class of goods and/or services not covered by the fee already paid (current fee information should be confirmed at http://www.uspto.gov).  37 C.F.R. §2.86(a)(2); TMEP §§810 and 1403.01.


**Fee**

The filing fee for adding classes to an application is as follows:

> (1)  $325 per class, when the fees are submitted with a response filed online via the Trademark Electronic Application System (TEAS) at http://www.uspto.gov/teas/index.html; and

> (2)  $375 per class, when the fees are submitted with a paper response.

37 C.F.R. §§2.6(a)(i) and (ii); TMEP §810.
If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney.  All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response.  *See* 37 C.F.R. §2.191; TMEP §§709.04-.05.  Further,

although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06.

/ekajubi/
Elizabeth N. Kajubi
Examining Attorney
Law Office 107
(571) 272-2727
elizabeth.kajubi@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

**Print: Sep 26, 2012**                    **85175392**

**DESIGN MARK**

**Serial Number**
85175392

**Status**
REGISTERED

**Word Mark**
KROMA

**Standard Character Mark**
Yes

**Registration Number**
4079066

**Date Registered**
2012/01/03

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
By Lee Tillett, Inc. CORPORATION FLORIDA Suite 102 670 N. Orlando
Avenue Maitland FLORIDA 32751

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Cosmetics.  First Use: 2004/03/00.  First Use In Commerce: 2004/03/00.

**Filing Date**
2010/11/12

**Examining Attorney**
HOLTZ, ALLISON

**Attorney of Record**
Bridget H. Labutta

-1-

# KROMA

**Print: Sep 26, 2012**                    **77115855**

**DESIGN MARK**

**Serial Number**
77115855

**Status**
REGISTERED

**Word Mark**
KIM KARDASHIAN

**Standard Character Mark**
Yes

**Registration Number**
3919997

**Date Registered**
2011/02/15

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
KIMSAPRINCESS, INC. CORPORATION CALIFORNIA C/O 16027 VENTURA BLVD.,
SUITE 600 ENCINO CALIFORNIA 91436

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Cosmetics.  First Use: 2010/02/28.  First Use In Commerce: 2010/02/28.

**Filing Date**
2007/02/26

**Examining Attorney**
RUBIN, LINDSEY

-1-

# Kim Kardashian

**Print: Sep 26, 2012**                     **85106598**

**DESIGN MARK**

**Serial Number**
85106598

**Status**
SECOND EXTENSION - GRANTED

**Word Mark**
KHLOE KARDASHIAN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK; SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
KHLOMONEY INC. CORPORATION CALIFORNIA C/O BOULEVARD MANAGEMENT, INC.
21731 VENTURA BLVD., STE. 300 WOODLAND HILLS CALIFORNIA 91364

**Goods/Services**
Class Status -- ACTIVE. IC 003. US 001 004 006 050 051 052. G & S:
Fragrance products, namely, fragrances, and perfumery; cosmetics;
personal care products and body care products, namely, toilet soap,
body lotion, skin creams, skin soap, hair care preparations, bath and
shower gels, bath powders, massage oils, and deodorant.

**Goods/Services**
Class Status -- ACTIVE. IC 004. US 001 006 015. G & S: Candles.

**Goods/Services**
Class Status -- ACTIVE. IC 009. US 021 023 026 036 038. G & S:
Eyewear, including sunglasses; protective covers for mobile phones,
mp3 players, and other personal computer and communication devices.

**Goods/Services**
Class Status -- ACTIVE. IC 014. US 002 027 028 050. G & S:
Jewelry, watches.

**Goods/Services**
Class Status -- ACTIVE. IC 018. US 001 002 003 022 041. G & S:
Handbags, tote bags, purses, wallets, luggage, all-purpose carrying
bags, umbrellas.

-1-

**Print: Sep 26, 2012**                    **85106598**

### Goods/Services

Class Status -- ACTIVE.  IC 025.  US  022 039.  G & S: Clothing and
clothing accessories, namely, tops, bottoms, belts, coats, jackets,
dresses, gloves, loungewear, scarves, sleepwear, socks, undergarments,
lingerie, swimwear, footwear, headwear.

### Goods/Services

Class Status -- ACTIVE.  IC 035.  US  100 101 102.  G & S: Online
retail store services featuring fragrance products, fragrances,
perfumery, cosmetics, personal care products, body care products,
candles, eyewear, protective covers for electronic devices, jewelry,
watches, bags, clothing, lingerie, swimwear, clothing accessories,
footwear and headwear.

### Name/Portrait Statement

The name "Khloe Kardashian" identifies a living individual whose
consent is of record.

### Filing Date

2010/08/12

### Examining Attorney

PAPPAS, MATTHEW

### Attorney of Record

Jennifer K. Craft and Andrew D. Sedlock

# KHLOE KARDASHIAN

**Print: Sep 26, 2012**                    **77115855**

**DESIGN MARK**

**Serial Number**
77115855

**Status**
REGISTERED

**Word Mark**
KIM KARDASHIAN

**Standard Character Mark**
Yes

**Registration Number**
3919997

**Date Registered**
2011/02/15

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
KIMSAPRINCESS, INC. CORPORATION CALIFORNIA C/O 16027 VENTURA BLVD.,
SUITE 600 ENCINO CALIFORNIA 91436

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Cosmetics.  First Use: 2010/02/28.  First Use In Commerce: 2010/02/28.

**Filing Date**
2007/02/26

**Examining Attorney**
RUBIN, LINDSEY

-1-

# Kim Kardashian

**Print: Sep 26, 2012**                    **77647942**

**DESIGN MARK**

**Serial Number**
77647942

**Status**
FOURTH EXTENSION - GRANTED

**Word Mark**
DASHING BY KIM KARDASHIAN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
KIMSAPRINCESS, INC. CORPORATION CALIFORNIA C/O Boulevard Management,
Inc. Suite 300 21731 Ventura Blvd Woodland Hills CALIFORNIA 91436

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
fragrances and perfumes for personal use.

**Name/Portrait Statement**
"KIM KARDASHIAN" identifies a living individual whose consent is of
record.

**Filing Date**
2009/01/12

**Examining Attorney**
ROSSMAN, MARY

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock

-1-

# DASHING BY KIM KARDASHIAN

**Print: Sep 26, 2012**                              **77964312**

**DESIGN MARK**

**Serial Number**
77964312

**Status**
FIRST EXTENSION - GRANTED

**Word Mark**
KK KIM KARDASHIAN

**Standard Character Mark**
No

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM

**Owner**
KIMSAPRINCESS, INC. CORPORATION CALIFORNIA C/O 16027 VENTURA BLVD.,
SUITE 600 ENCINO CALIFORNIA 91436

**Goods/Services**
Class Status -- ACTIVE. IC 003. US  001 004 006 050 051 052.  G & S:
(Based on Intent to Use) Cosmetics; (Based on Use) Fragrances. First
Use: 2009/12/15.  First Use In Commerce: 2009/12/15.

**Goods/Services**
Class Status -- ACTIVE. IC 018. US  001 002 003 022 041.  G & S:
Handbags, purses, wallets and tote bags.

**Goods/Services**
Class Status -- ACTIVE.  IC 025. US  022 039. G & S: Tops, bottoms,
dresses, jackets, coats, gloves, scarves, belts, headwear, footwear,
loungewear, sleepwear, socks, undergarments, lingerie and swimwear.

**Prior Registration(s)**
3371751

**Name/Portrait Statement**
The name "KIM KARDASHIAN" identifies a living individual whose consent
is of record.

**Description of Mark**
The mark consists of a "KIM" glyph comprised of two stylized "K"s back
to back, superimposed on the letters "I" and "M"; the wording "KIM

-1-

**Print: Sep 26, 2012**              **77964312**

KARDASHIAN" appears underneath.

**Colors Claimed**
Color is not claimed as a feature of the mark.

**Filing Date**
2010/03/21

**Examining Attorney**
SWIFT, GILBERT

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock



**Print: Sep 26, 2012**                    **85106598**

**DESIGN MARK**

**Serial Number**
85106598

**Status**
SECOND EXTENSION - GRANTED

**Word Mark**
KHLOE KARDASHIAN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK; SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
KHLOMONEY INC. CORPORATION CALIFORNIA C/O BOULEVARD MANAGEMENT, INC.
21731 VENTURA BLVD., STE. 300 WOODLAND HILLS CALIFORNIA 91364

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Fragrance products, namely, fragrances, and perfumery; cosmetics;
personal care products and body care products, namely, toilet soap,
body lotion, skin creams, skin soap, hair care preparations, bath and
shower gels, bath powders, massage oils, and deodorant.

**Goods/Services**
Class Status -- ACTIVE.  IC 004.  US  001 006 015.  G & S: Candles.

**Goods/Services**
Class Status -- ACTIVE.  IC 009.  US  021 023 026 036 038.  G & S:
Eyewear, including sunglasses; protective covers for mobile phones,
mp3 players, and other personal computer and communication devices.

**Goods/Services**
Class Status -- ACTIVE.  IC 014.  US  002 027 028 050.  G & S:
Jewelry, watches.

**Goods/Services**
Class Status -- ACTIVE.  IC 018.  US  001 002 003 022 041.  G & S:
Handbags, tote bags, purses, wallets, luggage, all-purpose carrying
bags, umbrellas.

-1-

**Print: Sep 26, 2012**       **85106598**

**Goods/Services**
Class Status -- ACTIVE.  IC 025.  US  022 039.  G & S: Clothing and
clothing accessories, namely, tops, bottoms, belts, coats, jackets,
dresses, gloves, loungewear, scarves, sleepwear, socks, undergarments,
lingerie, swimwear, footwear, headwear.

**Goods/Services**
Class Status -- ACTIVE.  IC 035.  US  100 101 102.  G & S: Online
retail store services featuring fragrance products, fragrances,
perfumery, cosmetics, personal care products, body care products,
candles, eyewear, protective covers for electronic devices, jewelry,
watches, bags, clothing, lingerie, swimwear, clothing accessories,
footwear and headwear.

**Name/Portrait Statement**
The name "Khloe Kardashian" identifies a living individual whose
consent is of record.

**Filing Date**
2010/08/12

**Examining Attorney**
PAPPAS, MATTHEW

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock

# KHLOE KARDASHIAN

**Print: Sep 26, 2012**                    **85380119**

**DESIGN MARK**

**Serial Number**
85380119

**Status**
NOTICE OF ALLOWANCE - ISSUED

**Word Mark**
LOVE BY KIM KARDASHIAN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Kimsaprincess Inc. CORPORATION CALIFORNIA c/o Boulevard Management,
Inc. 21731 Ventura Blvd., Ste. 300 Woodland Hills CALIFORNIA 91364

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Fragrances; perfumes; eau de parfum; eau de toilette; hair care
products, namely, hair shampoos, hair conditioners and hair care
preparations; skin soap; bath and shower gels; bath powders; body
lotions; body creams; massage oils; cosmetics; nail polish; and false
eyelashes.

**Prior Registration(s)**
3371751;3919997

**Name/Portrait Statement**
The name(s), portrait(s), and/or signature(s) shown in the mark
identifies Kimberly "Kardashian", whose consent(s) to register is made
of record.

**Filing Date**
2011/07/25

**Examining Attorney**
SOUDERS,MICHAEL

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock

-1-

# LOVE BY KIM KARDASHIAN

| To: | Boldface Licensing + Branding (VC@ETMLAW.COM) |
| Subject: | U.S. TRADEMARK APPLICATION NO. 85642342 - KARDASHIAN KHROMA - 2012-254-TM |
| Sent: | 9/26/2012 11:12:38 PM |
| Sent As: | ECOM107@USPTO.GOV |
| Attachments: | |

## IMPORTANT NOTICE REGARDING YOUR

## U.S. TRADEMARK APPLICATION

## USPTO OFFICE ACTION HAS ISSUED ON 9/26/2012 FOR
### SERIAL NO. 85642342

Please follow the instructions below to continue the prosecution of your application:

**TO READ OFFICE ACTION:** Click on this **link** or go to **http://portal.uspto.gov/external/portal/tow** and enter the application serial number to **access** the Office action.

**PLEASE NOTE**: The Office action may not be immediately available but will be viewable within 24 hours of this e-mail notification.

**RESPONSE IS REQUIRED:** You should carefully review the Office action to determine (1) how to respond; and (2) the applicable **response time period**. Your response deadline will be calculated from **9/26/2012** (or sooner if specified in the office action).

**Do NOT hit "Reply" to this e-mail notification, or otherwise attempt to e-mail your response, as the USPTO does NOT accept e-mailed responses. Instead, the USPTO recommends that you respond online using the Trademark Electronic Application System Response Form.**

**HELP:** For *technical* assistance in accessing the Office action, please e-mail **TDR@uspto.gov**. Please contact the assigned examining attorney with questions about the Office action.

## WARNING

**Failure to file the required response by the applicable deadline will result in the ABANDONMENT of your application.**

# Exhibit C

KHROMA BEAUTY BY KOURTNEY, KIM AND KHLOE

USPTO Office Action Rejecting Application

| To: | Boldface Licensing + Branding (VC@ETMLAW.COM) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 85646521 - KHROMA BEAUTY BY KOURTNEY, KIM AND - 2012-258-TM |
| Sent: | 9/26/2012 11:09:40 PM |
| Sent As: | ECOM107@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
#### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**   85646521

**MARK**: KHROMA BEAUTY BY KOURTNEY, KIM AND

# *85646521*

**CORRESPONDENT ADDRESS**:
VICTORIA CARVER
CARVER LAW
PO BOX 206
BELLEFONTE, PA 16823-0206

**CLICK HERE TO RESPOND TO THIS LETTE**
http://www.uspto.gov/trademarks/teas/response_forms.j

**APPLICANT**:       Boldface Licensing + Branding

**CORRESPONDENT'S REFERENCE/DOCKET NO** :
2012-258-TM
**CORRESPONDENT E-MAIL ADDRESS**:
VC@ETMLAW.COM

# *OFFICE ACTION*

# STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST
RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE
ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 9/26/2012**

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant
must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a),
2.65(a); TMEP §§711, 718.03.

<u>SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION</u>

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S.
Registration No. 4079066.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*
See the enclosed registration.

A likelihood of confusion determination in this case involves a two-part analysis.  The marks are
compared for similarities in their appearance, sound, connotation and commercial impression.  TMEP
§§1207.01, 1207.01(b).  The goods and/or services are compared to determine whether they are similar or
commercially related or travel in the same trade channels.  *See Herbko Int'l, Inc. v. Kappa Books, Inc.* ,
308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002); *Han Beauty, Inc. v. Alberto-Culver Co.*,
236 F.3d 1333, 1336, 57 USPQ2d 1557, 1559 (Fed. Cir. 2001); TMEP §§1207.01, 1207.01(a)(vi).

The applicant applied to register the mark KHROMA BEAUTY BY KOURTNEY, KIM AND KHLOE
for "personal care products including cosmetics, body and beauty care products."  The registered mark is
KROMA for "Cosmetics."

# I. COMPARISON OF THE MARKS

The marks are compared for similarities in sound, appearance, meaning or connotation. *In re E .I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). Similarity in any one of these elements may be sufficient to find a likelihood of confusion. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1536 (TTAB 1988); *In re Lamson Oil Co.*, 6 USPQ2d 1041, 1043 (TTAB 1987); *In re Mack*, 197 USPQ 755 (TTAB 1977); TMEP §1207.01(b).

In this case, the marks are similar in sound, appearance and connotation. The prefix of the applicant's mark is almost identical in appearance and pronounced the same as the registered mark. The applicant's mark includes additional wording but this wording fails to distinguish the marks. Consumers are generally more inclined to focus on the first word, prefix or syllable in any trademark or service mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F. 3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005); *see also Mattel Inc. v. Funline Merch. Co.*, 81 USPQ2d 1372, 1374-75 (TTAB 2006); *Presto Prods., Inc. v. Nice-Pak Prods., Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered" when making purchasing decisions).

Furthermore, the mere addition of a term to a registered mark generally does not obviate the similarity between the marks nor does it overcome a likelihood of confusion under Trademark Act Section 2(d). *See In re Chatam Int'l Inc.* , 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004) (GASPAR'S ALE and JOSE GASPAR GOLD); *Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 188 USPQ 105 (C.C.P.A. 1975) (BENGAL and BENGAL LANCER); *Lilly Pulitzer, Inc. v. Lilli Ann Corp.*, 376 F.2d 324, 153 USPQ 406 (C.C.P.A. 1967) (THE LILLY and LILLI ANN); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266 (TTAB 2009) (TITAN and VANTAGE TITAN); *In re El Torito Rests., Inc.*, 9 USPQ2d 2002 (TTAB 1988) (MACHO and MACHO COMBOS); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985) (CONFIRM and CONFIRMCELLS); *In re U.S. Shoe Corp.*, 229 USPQ 707 (TTAB 1985) (CAREER IMAGE and CREST CAREER IMAGES); *In re Riddle*, 225 USPQ 630 (TTAB 1985) (ACCUTUNE and RICHARD PETTY'S ACCU TUNE); TMEP §1207.01(b)(iii).

Moreover, similarity in sound alone may be sufficient to support a finding that the marks are confusingly similar. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1st USA Realty Prof'ls, Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007); TMEP §1207.01(b)(iv).

Regarding the issue of likelihood of confusion, the question is not whether people will confuse the marks, but whether the marks will confuse people into believing that the goods they identify come from the same source. *In re West Point-Pepperell, Inc.*, 468 F.2d 200, 175 USPQ 558 (C.C.P.A. 1972). For that reason, the test of likelihood of confusion is not whether the marks can be distinguished when subjected to a side-by-side comparison. The question is whether the marks create the same overall impression. *Recot, Inc. v. M.C. Becton,* 214 F.2d 1322, 54 USPQ2d 1894, 1890 (Fed. Cir. 2000); *Visual Information Inst., Inc. v. Vicon Indus. Inc.*, 209 USPQ 179 (TTAB 1980). The focus is on the recollection of the average purchaser who normally retains a general rather than specific impression of trademarks. *Chemetron Corp. v. Morris Coupling & Clamp Co.*, 203 USPQ 537 (TTAB 1979); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975); TMEP §1207.01(b).

## II.COMPARISON OF THE GOODS

The goods and/or services of the parties need not be identical or directly competitive to find a likelihood of confusion. Instead, they need only be related in some manner, or the conditions surrounding their marketing are such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods and/or services come from a common source. *On-*

*line Careline Inc. v. America Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000); *In re Martin's Famous Pastry Shoppe , Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984); *Guardian Prods. Co., Inc. v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); *In re Int'l Tel. & Tel. Corp .*, 197 USPQ 910 (TTAB 1978); TMEP §1207.01(a)(i).

The applicant identifies goods that are related and identical to the registrant's. In a likelihood of confusion analysis, the comparison of the parties' goods is based on the goods as they are identified in the application and registration, without limitations or restrictions that are not reflected therein. *In re Dakin's Miniatures, Inc.*, 59 USPQ2d 1593, 1595 (TTAB 1999); *see Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 1267-68, 62 USPQ2d 1001, 1004-05 (Fed. Cir. 2002); *In re Thor Tech, Inc.*, 90 USPQ2d 1634, 1638-39 (TTAB 2009); TMEP §1207.01(a)(iii).

In the present case, applicant's goods are cosmetics and registrant's goods are cosmetics. Thus, the goods are identical, and it is presumed that they move in all normal channels of trade and are available to all potential customers. *See Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1356, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *In re La Peregrina Ltd.*, 86 USPQ2d 1645, 1646 (TTAB 2008); TMEP §1207.01(a)(iii).

Accordingly, the goods are considered related for purposes of the likelihood of confusion analysis. Therefore, because of the similarities between the marks and goods of the parties, a likelihood of confusion as to source of these goods must be found to exist.

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

SEARCH RESULTS

The filing dates of pending U.S. Application Serial Nos. 85270154; 85106598; 85276436; 77647942 and 77964312 precede applicant's filing date. See attached referenced applications. If one or more of the marks in the referenced applications register, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion with the registered mark(s). *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.* Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced applications.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the marks in the referenced applications. Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

If the applicant chooses to respond to the refusal to register, the applicant must also respond to the following requirements.

DISCLAIMER REQUIRED

Applicant must disclaim the descriptive wording "BEAUTY" apart from the mark as shown because it merely describes an ingredient, quality, characteristic, function, feature, purpose or use of applicant's goods. *See* 15 U.S.C. §§1052(e)(1), 1056(a); *In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir.

1987); TMEP §§1213, 1213.03(a).

Specifically, the applicant's goods are identified as beauty care products. See attached defining the term from an www.infoplease.com search of "BEAUTY."

The following is the standard format used by the Office:

   **No claim is made to the exclusive right to use "BEAUTY" apart from the mark as shown.**
TMEP §1213.08(a)(i); *see In re Owatonna Tool Co.*, 231 USPQ 493 (Comm'r Pats. 1983).

LIVING INDIVIDUALS IDENTIFIED

The applied-for mark contains the names KOURTNEY, KIM AND KHLOE, each of which appears to identify a particular living individual; however, the application does not include these named parties' written consent to registration of their names as a trademark.  See attached from http://www.dailymail.co.uk/femail/article-2208914/First-glimpse-Kardashian-kosmetics-Kim-Kourtney-Khloe-strike-pose-new-Khroma-Beauty-line.html?ito=feeds-newsxml (9/26/12) demonstrating that the names identify living individuals. Written consent is required for registration of a mark containing a name, including a pseudonym, stage name or nickname, or signature, if the name or signature identifies a particular living individual.  Trademark Act Section 2(c), 15 U.S.C. §1052(c); TMEP §§813, 1206.04(a). Therefore, applicant must clarify whether these names identify particular living individuals and, if so, provide a written consent from these individuals, as explained further below.  37 C.F.R. §2.61(b); TMEP §§813, 1206.04(a).

**If the names or signatures in the mark do not identify particular living individuals**, then applicant must submit a statement that **the names KOURTNEY, KIM AND KHLOE** do not identify particular living individuals.  TMEP §§813.01(b), 1206.05; *see* 37 C.F.R. §2.61(b).

**If the names or signatures in the mark do identify particular living individuals**, then applicant must submit the following:

   A written consent statement for each named individual, personally signed by the relevant individual, authorizing applicant to register the individual's name, pseudonym, stage name, nickname, or signature as a trademark with the USPTO (e.g., "I consent to the use and registration by Boldface Licensing + Branding of my name {specify name, eg., KOURTNEY, KIM AND KHLOE} as a trademark and with the USPTO").

TMEP §§813, 813.01(a), 1206.04(a); *see* 37 C.F.R. §2.61(b).

Failure to respond to this inquiry is a sufficient basis for refusing registration.  *See In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI P'ship LLP*, 67 USPQ2d 1699, 1701 (TTAB 2003); TMEP §814.

IDENTIFICATION OF GOODS

The identification of goods is indefinite and must be clarified because it includes the open-ended wording "including."   See TMEP §§1402.01, 1402.03(a).  The identification must be specific and all-inclusive. Therefore, this wording should be deleted and replaced with "namely."

Applicant may amend the identification to list only those items that are within the scope of the goods set forth in the application or within the scope of a previously accepted amendment to the identification.  See 37 C.F.R. §2.71(a); TMEP §§1402.06 et seq., 1402.07.

The word "products" in the identification of goods is indefinite and must be clarified because it is too

broad and could refer to goods in multiple international classes.  Applicant must amend the identification by stating the common generic name of each item or by describing the nature, purpose and intended use of each item.  *See* TMEP §§1402.01, 1402.03.

The applicant may adopt the following wording if accurate:

Personal care products, **namely,** cosmetics, **non-medicated** body and beauty care products **in the nature of body oils, and beauty creams for body care**, in International Class 3.

Medicated **body** care **products**, namely, **skin care creams**, in International Class 5.

Please note that, while the identification of goods may be amended to clarify or limit the goods, adding to the goods or broadening the scope of the goods is not permitted.  37 C.F.R. §2.71(a); TMEP §1402.06.  Therefore, applicant may not amend the identification to include goods that are not within the scope of the goods set forth in the present identification.

For assistance with identifying and classifying goods and/or services in trademark applications, please see the online searchable *Manual of Acceptable Identifications of Goods and Services* at http://tess2.uspto.gov/netahtml/tidm.html.

Combined Applications

If applicant prosecutes this application as a combined, or multiple-class application, then applicant must comply with each of the following for those goods and/or services based on an intent to use the mark in commerce under Trademark Act Section 1(b):

(1)  Applicant must list the goods and/or services by international class with the classes listed in ascending numerical order.  TMEP § 1403.01; and

(2)  Applicant must submit a filing fee for each international class of goods and/or services not covered by the fee already paid (current fee information should be confirmed at http://www.uspto.gov).  37 C.F.R. §2.86(a)(2); TMEP §§810 and 1403.01.

**Fee**

The filing fee for adding classes to an application is as follows:

(1)  $325 per class, when the fees are submitted with a response filed online via the Trademark Electronic Application System (TEAS) at http://www.uspto.gov/teas/index.html; and

(2)  $375 per class, when the fees are submitted with a paper response.

37 C.F.R. §§2.6(a)(i) and (ii); TMEP §810.
If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney.  All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response.  *See* 37 C.F.R. §2.191; TMEP §§709.04-.05.  Further,

although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights.  *See* TMEP §§705.02, 709.06.

> /ekajubi/
> Elizabeth N. Kajubi
> Examining Attorney
> Law Office 107
> (571) 272-2727
> elizabeth.kajubi@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

http://dictionary.infoplease.com/beauty     09/26/2012 09:10:48 PM



# Dictionary

Find definitions for: _____ [go!]

**beau•ty**

Pronunciation: (byOOtē), [key]

—n.

—pl. -ties

1. the quality present in a thing or person that gives intense pleasure or deep satisfaction to the mind, whether arising from sensory manifestations (as shape, color, sound, etc.), a meaningful design or pattern, or something else (as a personality in which high spiritual qualities are manifest).
2. a beautiful person, esp. a woman.
3. a beautiful thing, as a work of art or a building.
4. Often, **beauties.** something that is beautiful in nature or in some natural or artificial environment.
5. an individually pleasing or beautiful quality; grace; charm: _a vivid blue area that is the one real beauty of the painting._
6. _Informal._a particular advantage: _One of the beauties of this medicine is the freedom from aftereffects._
7. (usually used ironically) something extraordinary: _My sunburn was a real beauty._
8. something excellent of its kind: _My old car was a beauty._

Random House Unabridged Dictionary, Copyright © 1997, by Random House, Inc. on Infoplease

◄ beautify                                                          beautyberry ►

http://dictionary.infoplease.com/beauty    09/26/2012 09 10 48 PM

- 2013 Calendar
- Most Populous Cities of the World
- Holidays in America
- Color Psychology
- Top 50 U.S. Cities
- Infoplease's Facebook page
- Follow Infoplease on Twitter

Search: Infoplease

[go!]
Info search tips

Search: Biographies

[go!]
Bio search tips

☞CITE  ✉EMAIL  🖶PRINT  ✆EMAIL  🖶HOTWORDS  ☆BOOKMARK

See also:
- *beauty* (Thesaurus)

**Related Content**

- Daily Word Quiz: feral
- Analogy of the Day: Today's Analogy
- Spelling Bee: Today's Spelling Bee
- Kids' Word Quiz: altruism
- Crossword: Crossword Puzzle Guide
- Frequently Misspelled Words
- Frequently Mispronounced Words
- Easily Confused Words
- Writing & Language

infoplease tools

Calculator
Spelling Checker
Place Finder
Distance Calculator
Periodic Table
Conversion Tool
Perpetual Calendar
Year by Year

More than 500
organizations
choose Capella,
as an education
partner.

▸ Doctoral
▸ Master's
▸ Bachelor's

LEARN MORE

Find definitions for: [ _____ ] [go!]

RSS | About Infoplease, **Part of Family Education Network** | Contact | Link to Us | Advertise with Infoplease | Terms of Use | Privacy
Part of Family Education Network | Homework Help | Reference Site | K-8 Kids | Poptropica | Parenting Advice | Teacher Resources | Online Gradebook
© 2000–2012 Pearson Education, publishing as Infoplease

**Print: Sep 26, 2012**                    **85175392**

**DESIGN MARK**

**Serial Number**
85175392

**Status**
REGISTERED

**Word Mark**
KROMA

**Standard Character Mark**
Yes

**Registration Number**
4079066

**Date Registered**
2012/01/03

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
By Lee Tillett, Inc. CORPORATION FLORIDA Suite 102 670 N. Orlando
Avenue Maitland FLORIDA 32751

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Cosmetics.  First Use: 2004/03/00.  First Use In Commerce: 2004/03/00.

**Filing Date**
2010/11/12

**Examining Attorney**
HOLTZ, ALLISON

**Attorney of Record**
Bridget H. Labutta

-1-

# KROMA

**Print: Sep 26, 2012**                    **77647942**

**DESIGN MARK**

**Serial Number**
77647942

**Status**
FOURTH EXTENSION - GRANTED

**Word Mark**
DASHING BY KIM KARDASHIAN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
KIMSAPRINCESS, INC. CORPORATION CALIFORNIA C/O Boulevard Management,
Inc. Suite 300 21731 Ventura Blvd Woodland Hills CALIFORNIA 91436

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
fragrances and perfumes for personal use.

**Name/Portrait Statement**
"KIM KARDASHIAN" identifies a living individual whose consent is of
record.

**Filing Date**
2009/01/12

**Examining Attorney**
ROSSMAN, MARY

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock

-1-

# DASHING BY KIM KARDASHIAN

**Print: Sep 26, 2012**                          **77964312**

**DESIGN MARK**

**Serial Number**
77964312

**Status**
FIRST EXTENSION - GRANTED

**Word Mark**
KK KIM KARDASHIAN

**Standard Character Mark**
No

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM

**Owner**
KIMSAPRINCESS, INC. CORPORATION CALIFORNIA C/O 16027 VENTURA BLVD.,
SUITE 600 ENCINO CALIFORNIA 91436

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
(Based on Intent to Use) Cosmetics; (Based on Use) Fragrances.  First
Use: 2009/12/15.  First Use In Commerce: 2009/12/15.

**Goods/Services**
Class Status -- ACTIVE.  IC 018.  US  001 002 003 022 041.  G & S:
Handbags, purses, wallets and tote bags.

**Goods/Services**
Class Status -- ACTIVE.  IC 025.  US  022 039.  G & S: Tops, bottoms,
dresses, jackets, coats, gloves, scarves, belts, headwear, footwear,
loungewear, sleepwear, socks, undergarments, lingerie and swimwear.

**Prior Registration(s)**
3371751

**Name/Portrait Statement**
The name "KIM KARDASHIAN" identifies a living individual whose consent
is of record.

**Description of Mark**
The mark consists of a "KIM" glyph comprised of two stylized "K"s back
to back, superimposed on the letters "I" and "M"; the wording "KIM

**Print: Sep 26, 2012**                    **77964312**

KARDASHIAN" appears underneath.

**Colors Claimed**
Color is not claimed as a feature of the mark.

**Filing Date**
2010/03/21

**Examining Attorney**
SWIFT, GILBERT

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock



**Print: Sep 26, 2012**                    **85106598**

**DESIGN MARK**

**Serial Number**
85106598

**Status**
SECOND EXTENSION - GRANTED

**Word Mark**
KHLOE KARDASHIAN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK; SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
KHLOMONEY INC. CORPORATION CALIFORNIA C/O BOULEVARD MANAGEMENT, INC.
21731 VENTURA BLVD., STE. 300 WOODLAND HILLS CALIFORNIA 91364

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Fragrance products, namely, fragrances, and perfumery; cosmetics;
personal care products and body care products, namely, toilet soap,
body lotion, skin creams, skin soap, hair care preparations, bath and
shower gels, bath powders, massage oils, and deodorant.

**Goods/Services**
Class Status -- ACTIVE.  IC 004.  US  001 006 015.  G & S: Candles.

**Goods/Services**
Class Status -- ACTIVE.  IC 009.  US  021 023 026 036 038.  G & S:
Eyewear, including sunglasses; protective covers for mobile phones,
mp3 players, and other personal computer and communication devices.

**Goods/Services**
Class Status -- ACTIVE.  IC 014.  US  002 027 028 050.  G & S:
Jewelry, watches.

**Goods/Services**
Class Status -- ACTIVE.  IC 018.  US  001 002 003 022 041.  G & S:
Handbags, tote bags, purses, wallets, luggage, all-purpose carrying
bags, umbrellas.

**Print: Sep 26, 2012**          **85106598**

**Goods/Services**
Class Status -- ACTIVE.  IC 025.  US  022 039.  G & S: Clothing and
clothing accessories, namely, tops, bottoms, belts, coats, jackets,
dresses, gloves, loungewear, scarves, sleepwear, socks, undergarments,
lingerie, swimwear, footwear, headwear.

**Goods/Services**
Class Status -- ACTIVE.  IC 035.  US  100 101 102.  G & S: Online
retail store services featuring fragrance products, fragrances,
perfumery, cosmetics, personal care products, body care products,
candles, eyewear, protective covers for electronic devices, jewelry,
watches, bags, clothing, lingerie, swimwear, clothing accessories,
footwear and headwear.

**Name/Portrait Statement**
The name "Khloe Kardashian" identifies a living individual whose
consent is of record.

**Filing Date**
2010/08/12

**Examining Attorney**
PAPPAS, MATTHEW

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock

-2-

# KHLOE KARDASHIAN

**Print: Sep 26, 2012**                     **85270154**

**DESIGN MARK**

**Serial Number**
85270154

**Status**
FIRST EXTENSION - GRANTED

**Word Mark**
UNBREAKABLE BOND BY KHLOE & LAMAR

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Khlomar, LLC LIMITED LIABILITY COMPANY CALIFORNIA c/o Boulevard
Management, Inc. 21731 Ventura Blvd., Ste. 300 Woodland Hills
CALIFORNIA 91364

**Goods/Services**
Class Status -- ACTIVE.  IC 003.  US  001 004 006 050 051 052.  G & S:
Fragrances, eau de parfum, eau de toilette, solid perfumes, hair care
preparations, bath and shower gels, bath powders, body lotions, body
creams, massage oils, after shave lotions, after shave balms, after
shave tonics, after shave gels, deodorant for personal use.

**Name/Portrait Statement**
The name(s), portrait(s), and/or signature(s) shown in the mark
identifies Khloe Kardashian Odom and Lamar Odom, whose consent(s) to
register is made of record.

**Filing Date**
2011/03/17

**Examining Attorney**
POWELL, LINDA

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock

-1-

# UNBREAKABLE BOND BY KHLOE & LAMAR

**Print: Sep 26, 2012**                    **85276436**

**DESIGN MARK**

**Serial Number**
85276436

**Status**
NOTICE OF ALLOWANCE - ISSUED

**Word Mark**
KOURTNEY KARDASHIAN

**Standard Character Mark**
Yes

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
2Die4Kourt CORPORATION CALIFORNIA c/o Boulevard Management, Inc. 21731
Ventura Boulevard, Suite 300 Woodland Hills CALIFORNIA 91436

**Goods/Services**
Class Status -- ACTIVE.  IC 025.  US  022 039.  G & S: Belts; Bottoms;
Coats; Dresses; Footwear; Gloves; Headwear; Jackets; Lingerie;
Loungewear; Scarves; Sleepwear; Socks; Swimwear; Tops; Undergarments.

**Name/Portrait Statement**
The name(s), portrait(s), and/or signature(s) shown in the mark
identifies "Kourtney Kardashian", whose consent(s) to register is made
of record.

**Filing Date**
2011/03/24

**Examining Attorney**
MACIOL, GENE

**Attorney of Record**
Jennifer K. Craft and Andrew D. Sedlock

-1-

# KOURTNEY KARDASHIAN

http://www.dailymail.co.uk/femail/article-2208914/First-glimpse-Kardashian-kosmetics-Kim-Kourtney-Khloe-strike
-pose-new-Khroma-Beauty-line.html?ito=feeds-newsxml     09/26/2012 10:28:47 PM



Find a Job | M&S Wine | Our Papers | Feedback                    Thursday, Sep 27 2012 3AM 64°F ☁ 6AM 62°F ☁ 5-Day Forecast

# **Mail** Online                                                              femail

Home | U.K. Home | News | Sport | U.S. Showbiz | **Femail** | Health | Science | Money | RightMinds | Travel | Columnists

Femail Home | Food | Pictures | Femail Boards | Fashion Store | Beauty | MyDish Recipe Finder | Baby Blog | Deals                    Login

⊙ Site ○ Web [                    ] 🔍 **Search**

## First glimpse of Kardashian kosmetics as Kim, Kourtney, and Khloe strike a pose for their new Khroma Beauty line

By DAILY MAIL REPORTER

PUBLISHED: 10:01 EST, 26 September 2012 | UPDATED: 10:06 EST, 26 September 2012

💬 Comments (19) | 📧 Share  👍 +1 | ⚫

The Kardashians' global domination is spreading into the world of cosmetics this Christmas, but to keep fans on their toes, the sisters have released a handful of teaser promo shots three months before products hit stores.

Kim, 31, Kourtney, 33, and Khloe Kardashian, 27, announced their forthcoming range, Khroma Beauty, in June - an 'affordable' line featuring false eyelashes, a 'suite' of mascaras and 'Kardazzle Compacts'.

An excited Kim took to her blog KimKardashian.celebuzz.com to announce the news: 'These are the brand new promo shots for our makeup line, Khroma Beauty!

'I can't wait to share all of our amazing new



http://www.dailymail.co.uk/femail/article-2208914/First-glimpse-Kardashian-kosmetics-Kim-Kourtney-Khloe-strike
-pose-new-Khroma-Beauty-line.html?ito=feeds-newsxml      09/26/2012 10:28:47 PM

'I can't wait to share all of our amazing new products with you guys.'

She continued: 'We've always wanted to release our own cosmetics line, so this is a dream come true.

'Our Lash Dash luxury lash collection will debut this holiday season, with more products coming in the new year.'

The December release, which will be exclusive to Ulta stores across the U.S., is being touted as a 'special holiday assortment'.

A further launch, including even more products, will follow in January-February 2013.

The second round of products will include a 'Kurve Compact' finishing powder, a pre-foundation treatment mask titled the Million Dollar Mask and an illuminator.



Flawless face: Kim, 31, announced their forthcoming beauty range titled Khroma Beauty in June

Kim has become known for her flawless, glowing, and dewy looking skin; often using heavy layers of products to achieve an enviable 'no-make-up' look.





http://www.dailymail.co.uk/femail/article-2208914/First-glimpse-Kardashian-kosmetics-Kim-Kourtney-Khloe-strike
-pose-new-Khroma-Beauty-line.html?ito=feeds-newsxml   09/26/2012 10:28:47 PM




© Kourtney Kardashian/Celebuzz

**Write caption here**



**COMING SOON**

Kardashian Khroma: The Kardashians will launch their cosmetics range this Christmas, but to keep fans on
their toes, Kim, Kourtney and Khloe have debuted teaser promo shots three months before products hit stores

She expressed her delight over the new venture in June, writing: 'I've been waiting forever to be able
to tell you guys and finally I can... my sisters and I are launching our own make-up line!!'

The sisters said in a press release: 'We're so
excited. There's a glam girl in all of us and it's a
dream come true to have our own makeup line
and to share it with women around the world.'



LASH DASH

Robin Coe-Hutshing, creative director of Khrome
Beauty, said the line should prove affordable to
fans.

http://www.dailymail.co.uk/femail/article-2208914/First-glimpse-Kardashian-kosmetics-Kim-Kourtney-Khloe-strike
-pose-new-Khroma-Beauty-line.html?ito=feeds-newsxml        09/26/2012 10:28:47 PM



More...

- Don't turn around! Kim Kardashian looks
  stunning in emerald green dress from the
  front... but comes undone at the back
- Getting her priorities straight! Make-up free
  Kim Kardashian squeezes in a mani-pedi after
  jetting in to LA for a few hours

'Kourtney, Kim and Khloe wanted to share their
access to luxury formulas with their fans and our
goal was to provide a prestige product range at
very accessible prices,' she said.

© Kourtney Kardashian-Celebuzz

**Holiday looks: The second round of products will be
released January 2013**

Kim added that she and her sisters have loved
make-up from very early ages, and even Kylie
Jenner, their half sister, tweeted this morning
about being a huge Cover FX fan.

'Growing up we would play with my mom's make-up and from a young age I always wanted to be a
make-up artist!,' Kim wrote.

'Of course now make-up plays such a huge role in all of our lives, whether we're on camera, at a
shoot glammed up or just keeping it natural day to day and it's a dream come true to be able to
create our own line of products to share with you guys' she continued. 'We can't wait!!!! xo'



http://www.dailymail.co.uk/femail/article-2208914/First-glimpse-Kardashian-kosmetics-Kim-Kourtney-Khloe-strike
-pose-new-Khroma-Beauty-line.html?ito=feeds-newsxml      09/26/2012 10:28:47 PM



Behind the scenes: The sisters said in a press release, 'We're so excited. It's a dream come true to have our own makeup line and to share it with women around the world'



Clean lines: Kim said that she and her sisters have loved make-up from very early ages. 'Growing up we would play with my mom's make-up, I always wanted to be a make-up artist'

Read more:
Khroma Beauty Promo Shots



http://www.dailymail.co.uk/femail/article-2208914/First-glimpse-Kardashian-kosmetics-Kim-Kourtney-Khloe-strike
-pose-new-Khroma-Beauty-lme.html?ito=feeds-newsxml       09/26/2012 10:28:47 PM



High school horror as        Like father like son:       Millionaire with cocaine     Newborn mauled to
'bullied' student, 13,        Steve 'Crocodile Hunter'     habit so bad his nose        death by family pit bull
shoots himself...             Irwin's boy...               collapsed is...              while police were...

## Share this article:



Facebook    Twitter    Google+    Messenger    LinkedIn

Digg it    Newsvine    Fark    Newsublic    Reddit

+1   0                                    Print article   Email article

**Sponsored Links**

False / Fake Eyelashes
With 500+ styles, why look
anywhere else? Huge savings,
best quality!
www.FalseEyelashesSite.com

## Comments (19)                                    Add your comments

The comments below have been moderated in advance.

| Newest | Oldest | Best rated | Worst rated |
|--------|--------|------------|-------------|

View all



DM, you must be having a funny five minutes. Kim Kardashian wouldn't know a 'no make-up' look if it smacked her in the face - although if you slapped her in the face your hand would probably bounce off the layers of slap

- Me-here , wales, 26/9/2012 16:57

Report abuse                                    Click to rate    Rating   306

Khloe looks beautiful.

- SamsiDreams , Liverpool, 26/9/2012 16:57

Report abuse                                    Click to rate    Rating   514

Does the spackle blade come free of charge?

- Libby , Somewhere, 26/9/2012 16:57

Report abuse                                    Click to rate    Rating   135

JUST GO AWAY NOW

- scotia , canada, 26/9/2012 16:55

Report abuse                                    Click to rate    Rating   160

http://www.dailymail.co.uk/femail/article-2200914/First-glimpse-Kardashian-kosmetics-Kim-Kourtney-Khloe-strike
-posy-new-Khroma-Beauty-line.html?ito=feeds-newsxml    09/26/2012 10:28:47 PM



The views expressed in the contents above are those of our users and do not necessarily reflect the views of MailOnline.

## Add your comment

Your comments:

You have 1000 characters left.

Libellous and abusive comments are not allowed. Please read our House Rules.

☐ I agree to the House Rules

For information about privacy and cookies please read our Privacy Policy.

Clear ▸    Submit Content ▸                                                           Terms

| **To:** | Boldface Licensing + Branding (VC@ETMLAW.COM) |
|---|---|
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 85646521 - KHROMA BEAUTY BY KOURTNEY, KIM AND - 2012-258-TM |
| **Sent:** | 9/26/2012 11:09:41 PM |
| **Sent As:** | ECOM107@USPTO.GOV |
| **Attachments:** | |

## IMPORTANT NOTICE REGARDING YOUR

## U.S. TRADEMARK APPLICATION

## USPTO OFFICE ACTION HAS ISSUED ON 9/26/2012 FOR
### SERIAL NO. 85646521

Please follow the instructions below to continue the prosecution of your application:

**TO READ OFFICE ACTION:** Click on this **link** **or** go to **http://portal.uspto.gov/external/portal/tow** and enter the application serial number to **access** the Office action.

**PLEASE NOTE**: The Office action may not be immediately available but will be viewable within 24 hours of this e-mail notification.

**RESPONSE IS REQUIRED:** You should carefully review the Office action to determine (1) how to respond; and (2) the applicable **response time period**. Your response deadline will be calculated from 9/26/2012 (or sooner if specified in the office action).

**Do NOT hit "Reply" to this e-mail notification, or otherwise attempt to e-mail your response, as the USPTO does NOT accept e-mailed responses. Instead, the USPTO recommends that you respond online using the Trademark Electronic Application System Response Form.**

**HELP:** For *technical* assistance in accessing the Office action, please e-mail **TDR@uspto.gov**. Please contact the assigned examining attorney with questions about the Office action.

## WARNING

**Failure to file the required response by the applicable deadline will result in the ABANDONMENT of your application.**